## *Ex parte* KELLY.

No. 7061.  Opinion Filed February 9, 1915.

(146 Pac. 444.)

1. **ATTORNEY GENERAL—Authority—Directions of Governor—Right to Prosecute.** When the Governor directs the Attorney General to conduct such investigations, commence and carry on such prosecutions, civil and criminal, to appear, defend, or prosecute such civil or criminal actions as might seem best to him, such directions are sufficient authority for the Attorney General to maintain an action to enjoin and abate a nuisance, and prosecute a defendant in such actions for contempt in violation of an injunction order issued therein.

2. **ATTORNEY GENERAL—Authority—Right to "Prosecute."** The authority of the Attorney General to prosecute an action, when directed by the Governor so to do, includes the right, by himself or a legal assistant, to institute such action by filing a petition in a civil case or an information charging a criminal offense.

3. **INDICTMENT AND INFORMATION—Information—Signing and Filing.** An information charging a person with criminal contempt can only be signed and filed by some officer expressly authorized by law so to do.

4. **INDICTMENT AND INFORMATION—Validity—Assistant Attorney General.** An information filed by one claiming to be "Special Assistant Attorney General," who is not one of the assistant attorneys general authorized by law, is void, and confers no jurisdiction upon the court; and the person charged will be discharged upon habeas corpus.

(Syllabus by the Court.)

Original proceeding for writ of habeas corpus by Joe Kelly. Writ granted.

*Luther James* and *McAdams & Haskell,* for petitioner.

*R. M. McMillan,* Asst. Atty. Gen., for Atty. Gen.

HARDY, J.  The petitioner, Joe Kelly, files an original petition in this court, praying for a writ of *habeas corpus,* and alleging that he is unlawfully restrained of his liberty by the

Form 19

sheriff of Tulsa county. There is an agreed statement of facts filed in the case, by counsel for petitioner, and the Attorney General, from which it appears: That on November 24, 1911, his excellency, the Honorable Lee Cruce, Governor of the state, transmitted to the Attorney General written directions to take such action as might be deemed proper by him in the enforcement of law in Tulsa county; which written communication was in confirmation of a telephone conversation had between the Governor and the Attorney General the day previous. That thereupon Hon. Charles West, Attorney General, appointed Ellis A. Robinson, Special Assistant Attorney General, to conduct such necessary investigations, commence and carry on such prosecutions, civil and criminal, to appear, defend, or prosecute such civil or criminal actions in any of the courts, as might seem best to him. The said Ellis A. Robinson took the oath as prescribed by statute, and filed same with the Secretary of State, as directed by the Attorney General; and on December 9, 1914, said Ellis A. Robinson, as such Special Assistant Attorney General, filed a certain suit in the district court of Tulsa county, praying for an order enjoining the defendants therein from conducting a nuisance, and for an order abating same; and on the 12th day of December, 1914, the judge of said court issued a temporary writ of injunction according to the prayer of said petition. That on the 19th day of December, 1914, the said Ellis A. Robinson, as such Special Assistant Attorney General, filed an information in the district court of Tulsa county, charging this petitioner and others with violating said injunction order, which said information was filed as case No. 1009. It further appears that at the time of the receipt of the Governor's communication by the Attorney General, and at the time of the appointment of the said Ellis A. Robinson as such Special Assistant Attorney General, and at all times mentioned in petitioner's petition, the Attorney General of this state had appointed Smith C. Matson, Chas. L. Moore, Samuel I. McElhoes, Claude J. Davenport, and Joseph L.

Hull, Assistant Attorneys General of the state of Oklahoma; each of whom had qualified as prescribed by law, and were at the time the said Ellis A. Robinson acted, or attempted to act, as such Special Assistant Attorney General, duly qualified and acting Assistant Attorneys General, and as such were discharging the duties prescribed for such office, and receiving the salary therefor provided by law. It further appears that a warrant was issued for the arrest and apprehension of petitioner, charged with contempt, as alleged in said information; that he was arrested by the sheriff of Tulsa county; and that at the time of the issuance of the order herein was restrained of his liberty by respondent.

Petitioner contends that the proceedings under which he is restrained are void for the reasons:

"First, that the Attorney General of the state was not clothed with power and authority to appoint a Special Assistant Attorney General, and delegate to him any duty devolving upon the Attorney General and his legally constituted deputies; second, does the Attorney General have the power and authority, by virtue of any law of this state, to institute proceedings in the district courts of the state; and, third, was the Attorney General sufficiently requested or directed by the Governor of this state to institute the proper proceedings involved in this litigation?"

The Attorney General files a brief herein, in which it is said:

"Stripping away all other things and getting down to what we think is the real point in controversy, we arrive at this proposition: Has the Attorney General of the state of Oklahoma the right and power to appoint a Special Assistant Attorney General and to dedicate to him any duty which may be performed by the Attorney General himself, or his five Assistant Attorneys General provided for by the statutes of the state."

The objection to the authority of the Attorney General to act upon the request of the Governor we think cannot be sustained. It will be noted by the agreed statement of facts that the Gov-

ernor by telephonic conversation requested the Attorney General to act in the premises, and the letter set out in the agreed statement is merely confirming the conversation of previous date. We know of no requirement of law that would make it necessary for the Governor to put in writing directions given to the Attorney General; nor, if that be the law, are we cited to any authorities which require the Governor to designate by name any person against whom proceedings are to be instituted, or to determine in advance the character of the proceedings that are to be brought. These matters are, in a large measure, left to the discretion of the Attorney General; and when the Governor has determined the necessity for action being taken, and has requested the Attorney General so to do, we think in a large measure his own discretion and judgment should govern as to what steps should be taken by him; and, the Governor having requested that the Attorney General take such steps as may be necessary under the conditions prevailing, it was the duty of the Attorney General so to do. *State v. Huston,* 21 Okla. 782, 97 Pac. 982; section 8057, Rev. Laws 1910; section 3632, Rev. Laws 1910. Even had the Governor not requested the Attorney General to proceed, the authority is granted to institute injunction proceedings by virtue of section 13, c. 70, Sess. Laws 1910-11, which is as follows:

"The Attorney General, county attorney, or any officer charged with the enforcement of any of the provisions of this act, of the county where such nuisance exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action, and no bond shall be required."

The objection is also urged that the Attorney General, even though requested by the Governor so to do, is without authority under the law to commence a proceeding; but that his authority is limited to the right of appearing in proceedings already instituted, and which are pending. This position is untenable. Section 8057, Rev. Laws 1910, provides:

"The Attorney General shall appear for the state and prosecute and defend all actions and proceedings in the Supreme Court and Criminal Court of Appeals in which the state shall be interested as a party, and shall also, when requested by the Governor or either branch of the Legislature, appear for the state and prosecute or defend in any other court or before any officer, in any cause or manner, civil or criminal, in which the state may be a party or interested, and shall attend to all civil cases remanded by the Supreme Court to any district court in which the state is a party or interested."

If it be held, as contended by counsel for petitioner, that the authority of the Attorney General is limited to the right of appearing in proceedings already pending, it would amount to a denial of his right to appear in any case where, by reason of the failure, neglect, or refusal on the part of the local authorities to institute proceedings, the same has not been done. The purpose of this statute in our judgment is to clothe the Governor, who is vested by law with the supreme executive authority, and clothed with the power of executing the laws, in a proper case, where from any reason the law is not enforced, to put in motion the machinery of the law to maintain its authority. Conditions might arise where local officials would refuse to enforce the law, and flagrant violations thereof might occur with impunity, unless there be some power by which these conditions could be remedied; and when, in the judgment of the Governor, the laws are not properly enforced by local officials, it was clearly contemplated by this statute that upon his request the Attorney General might in person take charge of the conditions, and in that situation would be clothed with all the authority of the local officers, and could take any steps necessary to institute any proceeding, or carry the same on to a final determination, notwithstanding the local officials might refuse to do so. In 23 Am. & Eng. Enc. of Law (2d Ed.), the term "prosecute" is defined as follows:

"To prosecute is to proceed against judicially.

"A prosecution is the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due course of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information."

In *State v. Bowles,* 70 Kan. 821, 79 Pac. 726, 69 L. R. A. 176, the first paragraph of the syllabus is as follows:

"Whenever required by the Governor to appear and prosecute criminal proceedings in any county, the Attorney General becomes prosecuting attorney of that county in those proceedings, and as such may sign indictments presented by the grand jury."

The serious question presented in this case is one which involves the right of the Attorney General to appoint what is termed "a Special Assistant Attorney General." Chapter 232, Sess. Laws 1913, creates the position of five Assistant Attorneys General, and fixes their salaries; and the agreed statement of facts shows that at the time of the appointment of the said Robinson, and during all times while he was acting as such Special Assistant Attorney General, each of these five places were filled by persons other than said Robinson, who were at the time discharging the duties of said offices. If the Attorney General had the right to appoint the said Robinson as Special Assistant Attorney General, and thereby clothe him with authority to act in his name and stead in this proceeding, then the petition must be denied; but, on the other hand, if he had no such authority, the appointment would be void, and the acts of said Robinson a nullity, and the filing of the information would confer no jurisdiction upon the court to entertain and hear the charge contained therein, and petitioner should be discharged.

The question here presented is not that of procuring assistance in matters already pending, which have been instituted by

proper authority, and over which the Attorney General, or one of his regular assistants, exercises supervision and control; but is the proposition as to whether or not the Attorney General may delegate to another, other than his five assistants, provided for by statute, the power, not only to appear and prosecute a pending proceeding, but to institute a criminal prosecution by filing an information charging the defendant therein with some offense against the laws of this state. A very similar question was passed upon by the Criminal Court of Appeals in the case of *McGarrah v. State*, 10 Okla. Cr. 21, 133 Pac. 260. In that case the county attorney of Oklahoma county had appointed all of the assistants authorized by law, and in addition thereto had undertaken to appoint one H. M. Peck as an assistant; and Peck had filed an information against McGarrah, for violation of the prohibitory laws, upon which a conviction was had, and an appeal taken to the Criminal Court of Appeals. In passing upon the case, the court said:

"We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The county attorney is a very responsible officer, selected by the people and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard all the real interests of public justice in favor of all concerned. It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided. * * * The office of county attorney is quasi judicial, and the county attorney and his legally appointed assistant must be exclusively the representative of public justice, and stand indifferent as between the defendant and any private interest. No doubt a county attorney may employ assistants in various ways, not involving his official discretion or responsibility; but our laws have

only allowed his official discretion to be delegated where assistant county attorneys have been provided for by the statute. The public have a right to insist upon the performance of public duties that are strictly official in the prosecution of crime by the county attorneys and assistants duly appointed and qualified as provided by law, and we think it would be directly contrary to public policy to allow or permit any general delegation of the county attorney's power or responsibility in this respect. It is our opinion that, the county attorney's name not having been subscribed to the information by himself or a legally constituted assistant, the court acquired no jurisdiction to try the case, and the conviction and sentence of the defendant are void."

In *Viers v. State,* 10 Okla. Cr. 28, 134 Pac. 80, the same question was up before the Criminal Court of Appeals, and the principle announced in the case above was reaffirmed. The third paragraph of the syllabus in that case is as follows:

"The county attorney is a quasi judicial officer, and he and his legally appointed assistant represent public justice exclusively, and stand indifferent as between the defendant and any private interest; and, while the county attorney may employ assistants in various ways not involving his official discretion or responsibility, he cannot delegate this discretion, except to an assistant duly appointed and qualified as provided by law."

The principles applied by the Criminal Court of Appeals to the office of county attorney, in so far as instituting criminal proceedings is concerned, are clearly applicable to that of Attorney General. The number of assistants have been provided for in each instance, and the decisions are that an information in a criminal case must be presented and filed by some officer authorized by law so to do. *Evans v. Willis,* 22 Okla. 310, 97 Pac. 1047, 19 L. R. A. (N. S.) 1050, 18 Ann. Cas. 258; *Thurman v. State,* 2 Okla. Cr. 718, 104 Pac. 67; *De Graff v. State,* 2 Okla. Cr. 519, 103 Pac. 538.

A proceeding for contempt for the violation of an order of injunction is criminal in its nature. *Smythe v. Smythe,* 28 Okla.

266, 114 Pac. 257; *Ex parte Gudenoge,* 2 Okla. Cr. 110, 100 Pac. 39; *Nichols v. State,* 8 Okla. Cr. 550, 129 Pac. 673. Whether it be necessary to institute a prosecution by affidavit or by information would make no difference, as in either event the proceeding could not be commenced by a person other than one authorized by law so to do. The law having created no such place as Special Assistant Attorney General, the attempted appointment would be void. If the appointment be upheld, in this case, upon the general proposition that the Attorney General has the implied power to make such appointment under the common law, he would have the authority to appoint as many assistants as he desired, and to delegate to them all of the powers of his office. In holding as we do, we do not intend to say that the Attorney General, after a case has been commenced, may not authorize counsel to assist in the management thereof so long as he or one of his legally appointed assistants shall retain the management and control thereof.

The petitioner is discharged.

All the Justices concur.