### T. R. BRAUGHT v. STATE.

No. A-3194.   Opinion Filed April·1, 1919.

Rehearing Denied April 30, 1919.

(179 Pac. 769.)

(Syllabus.)

**CONTINUANCE—Motion—Ruling—Statute.** Where, in a motion for a continuance by a defendant on account of an absent witness, it is not averred in the affidavit upon which such motion is based that the affiant believes that the facts which it is averred that such absent witness would testify are true, or believed by affiant to be true, and it is averred in said affidavit that said absent witness is a fugitive from justice to avoid arrest under a warrant for an offense committed in the state, and no diligence is shown to secure the attendance of such absent witness at the trial, or to secure his evidence, it is not error to overrule defendant's motion for continuance.

**PROSECUTING ATTORNEYS—De Facto Officer—County Attorney.** Where a duly elected county attorney is in undisputed possession of the office, and exercising the functions properly belonging thereto under color of title, he is a de facto officer, and his official acts are binding on the public and third persons.

3. **NEW TRIAL—Title of Prosecuting Attorney—Objection After Conviction.** After conviction a defendant cannot raise the question of title to the office of county attorney of the county attorney who signed the information and conducted the trial of the case.

4.    **PROSECUTING ATTORNEYS—Assistant County Attorney—De Facto Officer.** When two assistant county attorneys are appointed by a county attorney in a county legally entitled to only one assistant county attorney, the one of said assistants so appointed who first qualifies and enters upon the discharge of the duties of the office is at least a de facto assistant county attorney, and his official acts as such assistant county attorney are binding upon the public and third persons.

5.    **APPEAL AND ERROR—Waiver of Preliminary Examination— Validity of Information—Assistant County Attorney's Title to Office.** When a defendant is complained against for a felony, is arrested, appears, waives a preliminary examination, and is held to answer in the district court, and goes to trial without objection to the information in the district court, he thereby waives all right to question the validity of the information upon the ground that it was not signed by a legally qualified county attorney.

6.    **HOMICIDE — Substantial Prejudice—Murder—Sufficiency of Evidence.** _A most careful consideration of the entire evidence in the case establishes that the conviction in this case is based upon sufficient legal evidence, and the defendant in his brief admits that the weight of the evidence fully sustains the verdict of the jury, and a departure from the forms or mode of procedure prescribed by the Code of Criminal Procedure in respect to the pleadings in this case, if any, does not render the conviction in this case invalid, because the record in this case fails to disclose that any departure from the pleadings or procedure prescribed by the Code of Criminal Procedure of this state intervened in the trial of the case which actually prejudiced the defendant, or tended to prejudice him, in respect to his substantial rights.

Appeal from District Court, Creek County;

Ernest B. Hughes, Judge.

T. R. Braught was convicted of murder, and sentenced to be electrocuted. Motion for a new trial denied, and he appeals. Affirmed.

R. B. Thompson and Asp, Snyder, Owen & Lybrand, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. McMillan, Asst. Atty. Gen., for the State.

· ARMSTRONG, J. The plaintiff in error, T. R. Braught, hereinafter referred to as defendant, was by information charged with the murder of Otis Robbins, convicted, and sentenced to be put to death by electrocution. To reverse the judgment rendered, he prosecutes this appeal.

On the 13th day of September, 1917, the defendant filed an affidavit for a continuance, which said affidavit, omitting caption, is as follows:

"T. R. Braught, being first duly sworn, upon his oath deposes and says:

"That he is the defendant in the above-entitled cause; that he is now confined, and has been so confined, in the county jail of Creek county, Oklahoma, since about the 1st day of July, 1917, at which time he was committed by Justice of the Peace Edgerton to the county jail without bail, on the charge of murder; it being alleged that he had killed one Ote Robbins at Oilton, in the county of Creek and state of Oklahoma, on or about the 1st day of July, 1917.

"Your affiant states that he cannot at this time safely proceed to the trial of said cause for the want of material evidence that he has been unable to secure, and that his inability to secure said testimony and the attendance of the witnesses hereinafter named was not occasioned by any negligence of your affiant or of your affiant's counsel, but affiant states that at the time of the difficulty with the said Ote Robbins, the deceased, there was present an eyewitness to said difficulty, one Elzie Kessenger; that the said Elzie Kessenger, as your affiant has been informed and believes, has been absent from the state of Oklahoma ever since the setting of the docket upon which this affiant's case appears for trial and a long time prior thereto, and affiant says that he has used every reasonable means, and his counsel, to learn the whereabouts of said witness, and he has this day been informed from reliable parties that the said

witness is now in the city of Joplin, in the state of Missouri; that your affiant did have a subpœna issued for the said witness and placed in the hands of the sheriff of this county, which subpœna has been returned with the return of the sheriff indorsed thereon, 'unable to find said witness in my county,' and affiant states that if said witness, Elzie Kessenger, is present, he will testify that at the time of the difficulty, that is to say, at the time your affiant fired the shot that killed Ote Robbins, the deceased, that Ote Robbins held in his hand a loaded revolver belonging to this affiant, and threatened to shoot your affiant, and stated this language: 'You killed my cousin, Sam Cook; now, you son of a bitch, I am going to kill you with your own gun, and see how you like it.'

"Affiant states further that he, said witness Kessenger, will swear, if present, that he was standing beside your affiant; that the said witness was armed and that your affiant was unarmed; that while the deceased, Robbins, was pointing the gun at your affiant, and making the threats above alleged, and attempting to work the safety release upon said pistol, that your affiant reached in the waistband or belt of the said witness Kessenger, and took therefrom a revolver of 45 caliber, and fired the bullet that took the life of the deceased, Ote Robbins, all of which statements the said witness Kessenger will testify to; that your affiant cannot prove these facts by any other witness; that it is competent testimony and material to the defense of your affiant in the trial of this cause.

"And your affiant most respectfully states unto the court that he believes that if he is granted a temporary continuance in this matter for at least a period of ten or twelve days he will be able to secure the attendance of said witness, and states that said witness is not dodging the service of a subpœna in this cause, but that he had been informed and believes that the sheriff of Payne county has a warrant for the said Elzie Kessenger for some offense which your affiant does not know, and he is informed and believes that the witness is seeking to avoid the service of the warrant.

"Wherefore your affiant most respectfully prays this honorable court that he be granted a continuance, either for the term or for a period of ten or twelve days, in order that he may secure, if possible, the attendance of said witness Kessenger.

"[Signed]                         T. R. BRAUGHT.

"Subscribed and sworn to before me this 13th day of September, A. D. 1917.

"[Signed]                         HARRISON ARNOLD,

"*Court Clerk, Creek County.*

"[Seal.]          By DALLAS W. HALL, *Deputy.*"

On the same day that said affidavit was filed the motion was heard, overruled, and exception saved.

The charging part of the information in this case is as follows:

"That T. R. Braught did in Creek county, Oklahoma, on or about the 1st day of July, 1917, and anterior to the presentment hereof, commit the crime of murder in the form and manner as follows, to wit:

"That said T. R. Braught, then and there being, did then and there willfully, wrongfully, and unlawfully and feloniously, and without authority of law, and the premeditated design of him, the said T. R. Braught to effect the death of one Otis Robbins with a revolver, which he, the said T. R. Braught, then and there held in his hand, thereby inflicting a mortal wound upon the body of the said Otis Robbins, from which the said Otis Robbins did then and there die, all of which is contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state.

"EARL FOSTER, *County Attorney.*

"By BEN BRADEN, *Asst. County Attorney.*"

The defendant did not demur to, or in any way attack, the information, but went to trial on a plea of not guilty.

The evidence in this case, which is harmonious and uncontradicted, except by the evidence of the defendant, is: That between 3 and 4 o'clock a. m. on July 1, 1917, the defendant and deceased were at "The Hump," a roadhouse situated about three and one-half miles from Oilton; that the defendant, without provocation on the part of the deceased, knocked the deceased down, and cursed and abused him in a most violent manner, and, after knocking the deceased down, brutally stamped him several times, and was requested by onlookers to desist; that the deceased, who is designated by all of the witnesses as a boy, did not offer any resistance to the attacks of the defendant, but begged the defendant not to hurt him, and told the defendant that he (deceased) did not want any trouble, and that he (deceased) was his (defendant's) friend; that the defendant, with a pistol in his hand, told the deceased that he (defendant) "had a good mind to kill you, you son of a bitch"; that thereupon the deceased told the defendant that he was not mad with him, and did not want to fight, and that he (deceased) had not done anything to defendant; that the defendant then ordered the deceased to "get up and get into the car, which was standing near, and that deceased went to the car and was shoved into the car by the defendant; that the defendant got into the car, and forced the deceased to sit in the lap of defendant, and the car, in which the defendant, a driver, and deceased were, was driven to a garage in Oilton, in Creek county, Okla.; that defendant got out of the car, and the deceased in his shirt sleeves, without anything in his hands, remained seated in the car; that the defendant, with two pistols in his hands, tried to get deceased to take one of the pistols, saying to deceased,

"You son of a bitch, take one of these guns and go to shooting; I am going to murder you;" that deceased said to defendant, "I don't want any trouble with you; I am your best friend, and you don't know it;" that defendant pitched one of the guns into a seat of the car in which deceased was sitting, saying, "I am going to murder you," and immediately shot the deceased in his right side, and deceased fell out of the car, shortly thereafter died upon the floor of the garage, and that the deceased at the time he was shot by the defendant did not have any gun in his hands, and was not doing, or attempting to do, anything to the defendant, but was sitting quietly in the car, resting his hands upon the steering wheel of the car, and freely bleeding from the wounds that the defendant had inflicted upon him at the roadhouse; that after defendant killed deceased defendant, armed with a pistol, lined up the witnesses to the killing, five in number, and holding his pistol upon said witnesses made each of them agree, in the event of a trial, to swear that the deceased, at the time defendant shot him, had a gun in his hand, that, if defendant had not killed deceased, deceased would have killed defendant, and after taking the names of said witnesses, whom the defendant had detained for three-quarters of an hour, defendant permitted said witnesses to go; that shortly thereafter the defendant was arrested by an officer, and upon demand surrendered to him two guns, a Smith-Wesson and a Colts, and, in response to the inquiry of the officer as to what the trouble was, replied "that he [defendant] had bumped off a son of a bitch."

The defendant testified in his own behalf and denied every material part of the evidence given by the state's witnesses, except that the defendant shot and killed the deceased, and testified that, just before he shot deceased,

deceased had a pistol in his hand, and was trying to release the safety, which it was necessary to do, to shoot the pistol, and was trying to pull the trigger; that the gun with which he shot deceased did not belong to defendant, but to one Kessenger; and that just before shooting the deceased that he (defendant) took the gun from Kessenger; that he (defendant) had been informed prior to the shooting of the deceased that deceased had threatened the defendant's life, but that he (defendant) did not know that the Otis Robbins he shot was the one who threatened his life until about 15 minutes before he shot him.

The defendant introduced a witness who testified that, in 1916, Otis Robbins threatened the life of the defendant, and that he (witness) had communicated such threats to the defendant.

The state did not offer any evidence in rebuttal.

Very many errors are assigned in the petition in error, but only two are argued in the defendant's brief, and, under an unbroken line of decisions of this court, the errors assigned, but not argued or referred to in defendant's brief, are to be regarded as abandoned; but, in consideration of the fact that a human life is involved, we have carefully considered all the errors assigned and not argued in the brief, and are of the opinion that neither one of such errors not argued in defendant's brief is of merit.

The errors argued in the brief and relied upon for a reversal of the judgment rendered are: (1) Overruling the motion for a continuance; (2) overruling the motion for a new trial. Section 5045, Revised Laws 1910, provides that a motion for a continuance on account of an absent witness can be made only upon affidavit, and sets out what

the affidavit must contain, and, among other requirements, requires that it must set out what facts he believes the witness will testify to, and that he (defendant) believes such facts to be true.

A most careful reading and re-reading of the affidavit filed for a continuance in the instant case discloses that said affidavit does not contain the necessary averment that the affiant, the defendant, believes that the facts that the absent witness, Kessenger, as averred in said affidavit, would testify to, are true, nor is there anything in said affidavit from which it can be construed that the facts which it is averred that said witness would testify to are believed by the affiant, the defendant; and this failure to comply with the requirements of said section 5045, that the defendant believed that the evidence which it is averred in the said affidavit the absent witness, Kessenger, would furnish, is true, fully sustains the trial court in overruling the motion for a continuance; and when there is coupled with said fatal defect in said affidavit, that, as averred in said affidavit, the witness Kessenger is not within the state, and was a fugitive from justice from this state, and was seeking to avoid arrest, it certainly cannot be said that the trial court abused its discretion in overruling the motion for a continuance.

In *St. Louis & S. F. R. Co. v. Cox*, 26 Okla. 331, 109 Pac. 511, it is held:

"Where the continuance of the cause is sought on the ground of an absent witness, the party applying therefor must, among other things, make it clearly appear in the application therefor * * * that the facts affiant believes said witness will prove are by affiant believed to be true. Where said application fails to so state, it is not error to refuse to grant a continuance."

In *Terrapin v. Barker*, 26 Okla. 93, 109 Pac. 931, it is held:

"The application must state that the applicant believes the facts to which the absent witness will testify are true."

In *Rhea v. State*, 3 Okla. Cr. 230, 105 Pac. 314, it is said that section 4504, Wilson's Rev. and Ann. Stat. Okla. 1903, which is identical with section 5045, Revised Laws 1910, "governs applications for continuance in criminal as well as in civil cases."

Again, it is the settled law of this state that, in order to entitle one to a reversal on account of the overruling of a motion for a continuance, it must affirmatively appear that the trial court in overruling such motion abused its discretion.

In *Pugh v. State*, 6 Okla. Cr. 578, 127 Pac. 296, it is held:

"A motion for a continuance based on the absence of a witness who has not been served * * * and who has left the jurisdiction of the court should be overruled."

Certainly the contention of the defendant that the trial court erred in overruling the defendant's motion for a continuance is without the slightest merit.

On the 14th day of September, 1917, a verdict of guilty was rendered against defendant, fixing the penalty of death by electrocution.

On September 29, 1917, defendant filed a motion for a new trial, alleging ten grounds therefor, but the only grounds argued or insisted upon in his brief are the eighth, ninth, and tenth grounds assigned.

The gist of the eighth ground in the motion for a new trial is that the information upon which the defendant was tried was and is null and void and of no effect, for the reason that Earl Foster, whose name was and is signed to such information, and who is therein described as county attorney of Creek county, has never qualified to act, and is not in reality county attorney of Creek county by reason of his failure to make and execute his bond of office as required by section 1553, Revised Laws 1910, and that the said defendant was not advised and did not know of such failure of Earl Foster to qualify as county attorney until after the rendition of the verdict in this case.

The ninth ground of defendant's motion ' for a new trial is based upon the averments that the information by virtue of which the warrant of arrest was issued, and upon which the defendant was arraigned in the justice court, and the information filed in the district court, and upon which the defendant was tried, was null and void because not verified by any person whatsoever, or by any officer or purported officer whatsoever, and that to pronounce judgment and sentence upon this defendant in this case, and upon the basis of such preliminary information and such information filed in this cause, would and will deprive the defendant of his life and liberty without due process of law.

The tenth ground of the motion for a new trial is predicated upon the averments that the information upon which the defendant was tried is null and void and of no effect, and is insufficient in law to charge and upon which to have tried this defendant, because that, as shown by the last federal census, the official population of Creek county was and is 26,223, and by section 1563, Revised

Laws 1910, only one assistant county attorney is pro-
vided for or can lawfully exist in Creek county; that the
said information upon which defendant was tried was
signed in the name of Earl Foster, county attorney, by
Ben Braden, assistant county attorney; that, at the time
said Braden was attempted to be appointed and qualified
as assistant county attorney of Creek county, one assistant
county attorney, Fred Speakman, was already appointed,
qualified, and acting as assistant county attorney of Creek
county, and that said Ben Braden never was and never
became an assistant county attorney of Creek county, and,
the county attorney's name not having been subscribed to
said information by himself or by a legally appointed assist-
ant county attorney, the court acquired no jurisdiction to
try this cause, and the action of the court in attempting
to pass sentence and pronounce judgment upon this defend-
ant is void.

On the hearing of the motion for a new trial defend-
ant offered the following evidence in support of said mo-
tion:

Guy L. Covey testified that he was and had been the
county clerk of Creek county for the past three years; that
as such clerk he had a record of the approval of the bond
of Earl Foster as county attorney of Creek county; that
under date of January 2, 1917, the records of his office
show that "a meeting called at 10 o'clock a. m. by the board
of county commissioners adjourned at 12 o'clock, and con-
vened at 1:30; meeting called to order by Chairman Smith,
and the following proceedings had: Bond of Earl Foster,
county attorney, in the sum of two thousand dollars, is here-
by approved;" that said bond was not approved by any one
else except the county commissioners; that the bond was

filed in his office prior to its approval by the county commissioners, and is on file in his office, and there was indorsed thereon "Approved"; that he (Covey) had not approved said bond; that he was acquainted with Fred Speakman and Ben F. Braden, the purported assistant county attorneys of Creek county; that he had in his office the records of the alleged and purported appointments of these gentlemen as assistant county attorneys of Creek county; that in his commissions journal appears the following: "Upon motion duly carried Fred Speakman is hereby appointed deputy county attorney at a salary of $100 a month, and Ben Braden is hereby appointed deputy county attorney at $75 per month;" that both Fred Speakman and Ben Braden filed their oath of office in his (witness') office; that he could not say whether both of said affidavits were filed at the same time.

Earl Foster testified:

"That he was the same Earl Foster who is acting as county attorney of Creek county; that about somewhere near the 1st of July he appointed Fred Speakman as assistant county attorney; that he (Speakman) assumed the duties of the office of assistant county attorney some time about the 15th or 16th of July, ten or fifteen days after he appointed him; that he also appointed Ben F. Braden as assistant county attorney, and that he entered upon the duties of assistant county attorney; that he is the same Ben F. Braden who signed witness' name to the original information in this case against this defendant wherein he was charged with the crime of murder; that he (witness) did not sign the information; that his name was signed to the information by Ben F. Braden, and thereupon, at request of witness, the following statement was incorporated in the record: That Ben F. Braden and Fred Speakman were appointed, or at least attempted to be appointed, assistant county attorneys by me at the same time, and to

my best knowledge were approved by the board of county commissioners at the same time; but Ben F. Braden, or Ben Braden, assumed the duties of office, and qualified and was acting as deputy county attorney for at least five or ten days before Fred Speakman came to the office or qualified."

On direct examination Earl Foster testified that Braden reported for duty about 10 days earlier than Speakman; that he thought that Ben began working on the 1st, or just shortly after that, it was up near the 15th before Mr. Speakman began; that it was not the understanding that Fred Speakman was the first assistant and that Ben Braden was the second; the understanding was that Ben Braden was to receive $75 per month, and that Mr. Speakman was to receive $100 per month; that he did not know that Speakman and Braden have drawn their salaries for the same period of time. Thereupon Earl Foster made the following statement:

"I want to make one more statement: I don't know whether or not this is competent or not—you can object to it. The reason that Ben Braden signed the informations, or the reason that I gave him for signing most of the informations, was the fact that I myself had some doubts about both men being legal deputies, and the fact that Ben was in the office first was my reason for having him sign practically all the informations, I think he signed all of them up to the time he went to war."

R. B. Thompson testified that he was an attorney at law in the practice of law in the city of Sapulpa, "and was and am the attorney for the defendant T. B. Braught"; that he is acquainted with the handwriting of Ben F. Braden, purported and alleged to be an assistant county attorney; and that the signature upon the original information of Earl Foster was signed in the handwriting

of Ben Braden, and by Ben Braden as assistant county attorney.

Thereupon the defendant offered in evidence defendant's Exhibit A, the same purporting to be and is the information filed in the justice court of Eli Admire against defendant T. R. Braught, and upon which information the warrant of arrest was signed by Earl Foster, county attorney, and sworn to by Earl Foster.

The trial court then said, "I would like to ask you what the record shows in the trial of this case, if at or before the impanelment of the jury in this case any objection was made to the information in this respect?" To this inquiry Mr. Thompson, the attorney for the defendant, replied, "No, sir; none whatever."

Mr. Foster then stated that the defendant waived preliminary examination.

Thereupon was introuced the transcript of the justice of the peace court of D. Edgerton, which transcript shows "that defendant appeared in person, and, reading the information, enters plea of not guilty, and waives preliminary hearing, and is bound over to the action of the district court of Creek county, Oklahoma, on charge of murder, commitment issued, bond not allowed."

The material grounds for a new trial earnestly urged by the defendant raise the following questions:

(1) Does the failure of the county attorney, who acted as county attorney and prosecuted this case, to have his official bond as county attorney approved by the county clerk, render the information, upon which the defendant was tried without objection by the defendant, null and void?

(2)   Does the failure to verify the information for the arrest of the defendant in this case by a proper officer render void the preliminary examination of the defendant, where the defendant appeared, and without objection to such information, waived examination?

(3) Does the evidence submitted on the hearing of the motion for a new trial show that the preliminary information filed in this case was not .verified?

(4)   Does the fact that two assistant county attorneys were appointed and qualified, where only one assistant county attorney could be legally appointed, vacate the action of each of said appointees?

(5) Does the evidence heard on the motion for a new trial sustain the contention of the defendant that Ben Braden was not an assistant county attorney of Creek county *de facto?*

(6) Does the filing of a solvent bond in the form and conditioned as required by law, in the office of the county clerk of his county, which bond is afterwards approved by the board of county commissioners, and remains on file in the office of the county clerk, having indorsed thereon "Approved," but such approval not signed by the county clerk, constitute a sufficient compliance with section 1553, Revised Laws 1910?

(7) Can a defendant who went to trial on an information without objection, after conviction, on a motion for a new trial, successfully attack such information upon the ground that the county attorney, nor his assistant who signed and filed said information, were not legal officers?

These questions will be answered in the order stated:

1.  Whether or not Earl Foster had qualified as county attorney by filing and having approved the bond required by law to be given cannot be legally raised by the defendant on his motion for a new trial, as this question can only be legally raised by a direct attack upon Foster's right to the office; and, if it be admitted—which we do not concede— that Earl Foster did not file and have approved his bond as county attorney, such failure would not render the information upon which the defendant was, without objection, tried, null and void.

In *Ex parte Hand,* 13 Okla. Cr. 614, 166 Pac. 449, it is held:

"A person in undisputed possession of the office of justice of the peace, and exercising the junctions properly belonging thereto under color of title to such office, is a *de facto* justice of the peace, and his official acts are binding on the public and third persons."

In the body of the opinion it is said:

"It is unnecessary to determine in this proceeding whether or not an appointment to a vacancy in the office of justice of the peace elected in towns of less than 1,500 inhabitants, is to be made by the board of trustees of the town or by the board of county commissioners. G. W. Leighnor is admitted to be in undisputed possession of such office and its records, and he exercises the functions belonging to it under color of title. The state has not questioned his title to the office as a *de facto* justice of the peace, and his official acts were binding on the public and third persons."

Here Earl Foster was in undisputed possession of the office of county attorney of Creek county, and exercising the functions belonging to the office under color of title, and the state had not questioned his title to the office,

and consequently, if it be admitted that Earl Foster had not filed and had approved the bond required by section 1553, Revised Laws 1910, his act in filing the information upon which the defendant was tried was valid and binding upon the defendant.

2. The law required that the preliminary information in a crimnal case be verified, and when not verified is void; but in the instant case the information was verified in the name of Earl Foster acting through Ben Braden, his *de facto* assistant. This was sufficient, and the preliminary information was not void by reason of, not being properly verified by an officer as required by law.

3. We are of the opinion that the evidence and record in this case shows that the preliminary information was properly verified.

4. Admitting that only one assistant county attorney could be legally appointed for Creek county, we are of the opinion that as to which of the two appointed as assistant county attorney is the legal one cannot be legally questioned by the defendant on a motion for a new trial, nor can it be determined by the amount of salary respectively received by them. Certainly Ben Braden was at least a *de facto* assistant, and his acts were binding upon the defendant. *Ex parte Hand, supra.*

5. We are of the opinion that the evidence of the defendant on his motion for a new trial does not sustain his contention that Ben F. Braden was not a *de facto* assistant county attorney.

6. We are of the opinion that where a county attorney delivers a solvent bond to the county clerk in the amount and conditioned as required by law, which bond is approved

by the board of county commissioners of the county, and said bond is afterwards found in the files of the county clerk having indorsed thereon "Approved" by some one connected with his office, but the name of the county clerk is not signed to such approval, that such bond is a sufficient compliance with section 1553, Revised Laws 1910, and is a binding obligation on the part of such county attorney for the faithful performance of the duties of his office. In 29 Cyc. 1387 (IV) it is said:

"Because of their desire to uphold official bonds, courts hold that no express delivery, acceptance or approval of the bond need be proved, but that if the bond is found in the possession of the proper authorities, and the officer enters into the performance of his duties, the delivery, acceptance, or approval will be regarded as *prima facie* proven. *Ramsey v. People,* 197 Ill. 572 (64 N. E. 549, 90 Am. St. Rep. 177) ; *Portland v. Besser,* 10 Or. 242; *McFarland v. Howell,* 16 Tex. Civ. App. 246 (43 S. W. 315).

"Where an officer has done all that he can do to comply with the law with respect to the giving of a bond, he cannot be deprived of his rights by the unlawful acts or the willful refusal upon the part of another officer to perform a duty imposed upon him with regard to such bond." *State v. Dahl,* 65 Wis. 510, 27 N. W. 343.

7. We are of the opinion that a defendant who goes to trial upon an information without objection cannot, on a motion for a new trial, successfully attack such information as null and void upon the ground that the officers who signed and filed said information were not legal officers, for the reason that if they were *de facto* officers their official acts were binding upon the defendant.

*Ferguson v. Lawrence,* 69 Oklahoma, 157 Pac. 1038, is a direct attack upon the title to an office, and is not in point in this case.

*McGarrah v. State,* 10 Okla. Cr. 21, 133 Pac. 260, is a prosecution for a misdemeanor, and in said case it is held:

"The conviction of a person under an information charging a misdemeanor, not signed by the person designated by law, is void for want of jurisdiction in the trial court."

This rule does not prevail where the offense charged is a felony, and the defendant has waived a preliminary trial and been held to answer. Besides, in the *McGarrah Case* the information was attacked, prior to the plea entered, by motion to quash, and the evidence in that case discloses that the attorney signing the information was not an assistant county attorney *de facto,* but an attorney privately employed and paid by the county attorney, who was not even present when McGarrah was tried, and in no wise adopted the action of said attorney signing the information, and therefore the case of *State v. McGarrah, supra,* is not in conflict with the views herein expressed.

In *Sayers et al. v. State,* 10 Okla. Cr. 233, 135 Pac. 1073, it is held:

1. "Where a preliminary complaint charging a felony is sworn to positively by some person, it is sufficient of itself to authorize the magistrate to issue a warrant for the arrest of the defendant, and it is sufficient to authorize the magistrate to hold a preliminary examination."

2. "The fact that there was a preliminary examination, and a judicial determination thereon by the magistrate that a felony has been committed, and that there is probable cause to believe the defendant guilty thereof, confers jurisdiction on the district court, and authorizes the county attorney to file an information * * * charging the crime committed according to the facts in evidence on such examination."

In the instant case there was an affidavit made charg-, ing the defendant with murder, and whether the party signing the affidavit was a county attorney or an assistant or a private person is entirely immaterial, and the defendant was arrested, appeared, waived examination, and was held to answer, and this gave the county attorney, or a *de facto* county attorney, authority to file the information upon which the defendant was tried, and conferred jurisdiction upon the district court of the case.

If it be considered that Braden was not a *de facto* assistant county attorney—which we do not hold—the county attorney appeared for the state, read the information to the jury, and conducted the entire trial of the defendant, and thereby adopted and confirmed the actions of Braden in signing the name of the county attorney to the information.

The case of *Viers v. State,* 10 Okla. Cr. 28, 134 Pac. 80, cited and relied upon by the defendant, is a prosecution for a misdemeanor, and the county, under the statute, could have but one legally constituted assistant county attorney. Two assistant county attorneys were appointed, and the attorney who acted for the state in said case was appointed after the appointment of an assistant county attorney who was still acting, and it was stipulated that said attorney who represented the state in said case was illegally appointed. In the instant case the two assistant county attorneys were appointed at the same time, and Ben Braden, who acted as assistant county attorney in this case, qualified and began to discharge the duties of the office first; and we are of the opinion that Ben Braden was the constituted assistant attorney of Creek county, or at least the assistant county attorney *de facto* of Creek county,

and legally authorized to act in this case, and that therefore the holding in *Viers v. State, supra,* does not support the contention of the defendant that the information upon which the defendant was tried, by reason of being signed by Braden as assistant county attorney, was void.

It must be remembered, also, that in the *Viers Case, supra,* the indictment was attacked prior to the plea, and that the defendant did not go to trial without objection to the information, and after conviction raise the question of the validity of the information by a motion for a new trial.

In *Ex parte Kelly,* 45 Okla. 577, 146 Pac. 444, it is said:

"An information charging a person with criminal contempt can only be signed and filed by some officer expressly authorized * * * so to do."

A criminal contempt is a misdemeanor, and hence the above stated rule does not, in our opinion, apply in felony cases; and besides, in the instant case the defendant went to trial on the information without objection, and cannot now be heard to question the validity of the information.

In *Brown v. State,* 9 Okla. Cr. 382, 132 Pac. 359, it is held:

"A departure from the former mode prescribed in the Code of Criminal Procedure in respect to any pleadings or proceedings or any mistake therein will not render a judgment of conviction invalid unless it has actually prejudiced the defendant, or tended to prejudice him, in respect to his substantial rights. * * *

"The Code of Criminal Procedure directs that all informations shall be signed by the county attorney. This is required as a guaranty of good faith and to protect a defendant against prosecution by private parties without authority of law; but where a defendant pleads to an in-

formation which is not signed by the county attorney, and without objection goes to trial thereon, he waives all right to afterwards object to the information upon this ground, and cannot be heard upon appeal to complain that the information was not signed by the county attorney as directed by law."

The defendant knew, or should have known, prior to pleading to the merits of the case, all of the alleged grounds upon which he in his motion bases the invalidity of the information upon which he was tried, and certainly could not legally delay his attack upon the information, take the chances of acquittal, and after his conviction legally insist that his conviction was erroneous by reason of the invalidity of the information. He cannot be thus permitted to take a chance of acquittal, and withhold that which will, as claimed by defendant, entitle him to a new trial.

Section 5780, Revised Laws 1910, provides that in attacking an indictment or information "that the defendant shall be conclusively presumed to know matters of record."

The bond of the county attorney, and the appointment of Braden as assistant county attorney, were of record, and if these records, as now insisted upon by the defendant, show that Earl Foster had not a legally appointed assistant county attorney, he should have attacked the information upon these grounds prior to pleading not guilty.

Section 6126 of the Code of Procedure Criminal (Rev. Laws 1910) of the state provides:

"Neither a departure from the form or mode prescribed in this chapter in respect to any pleadings or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

Section 6005 of the Code of Criminal Procedure (Rev. Laws 1910) of this state provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

When an error has been committed upon the trial of a case it is the duty of the court, upon the inspection of the entire record, to determine whether or not the defendant suffered any material injury from such error. Unless such injury appears, the error will not be ground for reversal.

When the evidence in a case is clear as to the guilt of a defendant, and all the forms of the law have been complied with, and there is no reason to believe that upon a second trial an intelligent and honest jury can arrive at any other verdict than that of the guilt of the accused, the judgment of the lower court will not be set aside for anything less than fundamental error. *John W. Hooper v. State,* 7 Okla. Cr. 43, 121 Pac. 1087; *Coleman v. State,* 6 Okla. Cr. 253, 118 Pac. 594; *R. C. Swartz v. State,* 6 Okla. Cr. 590, 120 Pac. 1029; *Offitt v. State,* 5 Okla. Cr. 49, 113 Pac. 534; *Carter v. State,* 6 Okla. Cr. 232, 118 Pac. 264; *Suitor v. State,* 6 Okla. Cr. 305, 118 Pac. 412; *Smith v. State,* 6 Okla. Cr. 380, 118 Pac. 1003; and many subsequent decisions.

The evidence is clear as to the guilt of the defendant, and this is admitted in defendant's brief, in which it is said: "It is not the purpose of the defendant to review the

testimony in the case, as counsel could hardly expect to reverse the case on any question involving the weight of the testimony;" and this evidence shows that the defendant was guilty of a most brutal, unprovoked murder, without the slighest extenuating circumstance; that, in addition, he was also guilty of attempting to suborn testimony in his behalf, and on his trial was guilty of the most glaring and unreasonable perjury; and that he had a fair and impartial trial, and was most ably defended in this court and the court below. The very exhaustive briefs of the learned attorneys of the defendant cite many authorities of courts of other states, some of which may not be in accord with the authorities we cite or conclusious reached in this case predicated upon opinions of the courts of last resort of this state; but we are bound by the opinion of our own court, and cannot follow the opinions of the courts of other jurisdictions in conflict with settled rules long established in this jurisdiction.

We are of the opinion that the court did not err in overruling the defendant's motion for a new trial.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

The time fixed for the execution of the sentence of death upon the defendant having expired, it is hereby ordered, adjudged, and decreed by this court that the warden of the state penitentiary at McAlester proceed to carry into execution the judgment and sentence of the district court of Creek county in accordance with the death warrant issued thereon; and Friday, the 23d day of May, 1919, is designated as the date for the execution of said sentence.

DOYLE, P. J., and MATSON, J., concur.