. E. L. LEMLEY v. STATE.

No. A-2485. Opinion Filed May 26, 1917.

(164 Pac. 1152.)

**APPEAL AND ERROR—Fundamental Error.** When, in the trial of a criminal case, the proof introduced on behalf of the state overwhelmingly establishes the guilt of the accused, and when the testimony of the accused himself is insufficient to justify the criminal conduct complained of, only fundamental error will be considered on appeal.

*Error from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

E. L. Lemley was convicted of an assault with a dangerous weapon with intent to do bodily harm, without justifiable cause, and he brings error. Affirmed.

*Frye & Frye,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, E. L. Lemley, was tried at the December, 1914, term of the district court of Sequoyah county, upon a charge of assault with intent to kill, and convicted of assault with a sharp and dangerous weapon, with intent to do bodily harm, without justifiable or excusable cause, and his punishment fixed at imprisonment in the state penitentiary for one year.

The information charges E. L. Lemley with committing an assault with intent to kill Ora Green. . The trouble occurred at a neighborhood schoolhouse near Pawpaw, in Sequoyah county. It appears that the building was used jointly for school and church purposes; that various religious denominations used the building as a church; that in September, 1914, a Christian preacher, who is referred

to in the testimony as a "Campbellite," was conducting services at this schoolhouse. Plaintiff in error, Lemley, appears to be a member of some other church which promulgates the doctrine of Holy Santification. The Campbellite preacher had announced that he would deliver a sermon on "Holy Sanctification," and apparently was proceeding to do so in first-class order, when Lemley interrupted the proceedings and began to criticize the preacher's conduct. The preacher informed Lemley that if he did not behave himself he would have him taken out of the house. Lemley's 17-year-old son joined in the controversy and told the preacher that he would take him out. Neighbors counseled with the Lemleys, and the boy finally got up and left the house. On the outside Ora Green was taking care of his small children, when young Lemley came out and began to curse the Campbellites in general and the preacher conducting the services in particular. The testimony shows that Green is not a member of any church, but "leans towards the Campbellites," as he puts it. His wife also is inclined towards the Campbellites. Following some remarks made by young Lemley, Green knocked him down with his fist. The older Lemley learned of the trouble and came on to the scene, used some rough language, and threatened to kill Green and approached him with an open knife. Green says that he asked Lemley to fight fair; that Lemley approached with his knife open and a "business-like look" in his eye, whereupon Green started to run; that the two Lemleys followed him; that they ran around the house rapidly. Other witnesses testified to the same facts; that he (Green) stepped into a hole and fell; that the older Lemley got on him and cut him severely with the knife. A young man named Cherry pulled Lemley off of Green.

Considerable language was used in connection with the trouble. Young Lemley, it is charged, holloed to his father to catch Green and he would cut his throat. Green seems to have called for help. When young Cherry pulled Lemley off of Green, Lemley stuck his knife into him (Cherry), but the wound was not serious.

. Dr. T. W. Collins, a local physician, testified that he attended Green after the trouble for several weeks; that there were two wounds; one was six or eight inches long, and cut very deep into the muscles of the arm, and barely missed severing an artery; that there was another wound about five inches long and an inch deep in the leg.

Lemley himself testified that he was a farmer and had a wife and six children; that he went to church on the night of the difficulty, and that the preacher was ridiculing holiness and read certain Scriptures and skipped verses, and that he asked him to read all of it, and the preacher advised him to shut his mouth and called him a liar and vilified him; that Tom Walls made a statement that if there were those in the house who did not want to hear this preacher for them to go outside; that he started out, and when he got out he heard the boy hollo, "Hurrah for the Campbellites," and that a man hit him, and he ran around the house after the man, and the boy holloed, "Catch him, Papa"; that he fell on the man, and that the man kicked at him and struck the knife; that he had nothing against Green, and had been his friend; that Green threw up his arm, and he struck him in the arm with his knife; that Elmer Cherry ran up and said, "I want to see the son of a bitch that will just jump on one"; that he punched Cherry with his knife. He also said that he never swore at all that night, and that Ora Green never spoke a word; that just before the difficulty

he had testified that he was sanctified, but he was in a passion at the time of the trouble; that he was a larger man than Green.

Upon this testimony, in fact upon the testimony of the plaintiff in error himself, the jury was warranted in finding him guilty of assault with a sharp and dangerous weapon with intent to do bodily harm, without justifiable or excusable cause. The court instructed the jury to take into consideration the fact that the son of the plaintiff in error had been assaulted in his presence, in the matter of mitigation of punishment or as a defense.

A careful consideration of the record impels us to the conclusion that the jury made no mistake in this case. This is a country wherein each and every person is entitled to his own religious belief, and if one does not agree with the views of others, he is not bound to attend their church or participate in their religious exercises. No one has any right whatever to go into any religious meeting of any kind and create a disturbance. The law protects the most humble congregation from rowdyism, and rowdyism would be a mild designation of the disturbance precipitated at this meeting, out of which this criminal charge finally grew.

The record discloses no error prejudicial to the rights of the plaintiff in error.

The judgment of the trial court is therefore affirmed.

DOYLE, P. J., and BRETT, J., concur.