## JOE SINQUEFIELD v. STATE.

No. A-7593. Opinion Filed Dec. 13, 1930.
(294 Pac. 203.)

I. C. Sprague, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the district court of McCurtain county of the crime of assault to do bodily harm, and his punishment fixed by the jury at imprisonment in the county jail for one year.

The testimony on behalf of the state in substance shows that the defendant shot Mannie Woods, a negro, with a .22 rifle. The shooting took place on the 21st day of February, 1929, on a farm near Redlake in the southern part of McCurtain county. The testimony shows that on the day of the shooting the defendant and the prosecuting witness were at the house of Tom Gaffney, who was also a colored man; that, as Mannie Woods was leaving the Gaffney place, he had some conversation with the defendant. The testimony of the state and of the defendant as to what the prosecuting witness said to the defendant just before the shooting is in conflict. It is admitted that the defendant shot the prosecuting witness with a .22 rifle, hitting him just back of the ear.

The defendant in his testimony admits shooting Mannie Woods, and states he was standing in the front yard near a gate when Woods and a negro doctor came out of the house and started out of the gate.

"Mannie said to me, 'Joe, how do you like the snow?' and I said, 'You should learn how to address a white man,' and as Mannie walked through the gate he said he was a free man, and could call me what he liked; and I called him an impudent hound, and he wheeled and said, 'I don't take that off of no white man.' I picked up my target and Mannie said for me to wait until he got a gun and he would mix it with me; I told him to stop and he did not, and I shot him. I believed he had a gun at the corner of the fence and that he was making for it."

The defendant called W. A. (Bill) Lofton as a witness, who testified he had known the defendant since 1908, and that his reputation in the community in which he lived for being a peaceable, law-abiding citizen was good.

The court instructed the jury not to consider this evidence as to the defendant's reputation. The defendant

then offered to show by the testimony of J. C. Joplin, Gus Rowland, and S. R. Bryant that they and each of them knew the reputation of the defendant in the community in which he lived for being a peaceable, law-abiding citizen, and that his reputation in that respect was good. This offer was refused by the court, and the defendant reserved an exception.

Several errors are assigned by the defendant. The only one that it is deemed necessary to consider to arrive at an opinion in this case is the eighth assignment, which is as follows:

"Error of the court in refusing to permit the defendant to prove his reputation for being a quiet, peaceable and law-abiding citizen."

It is always permissible for a person charged with a crime to offer his general reputation in the community in which he resides as being a peaceable, quiet, law-abiding citizen. Good character is admitted for two purposes, first, to raise a presumption that there must be some mistake in the testimony of the state, on the ground that a person of good character would not have committed the crime charged, and for this purpose the evidence of good character may be sufficient to create in the minds of the jury a reasonable doubt of the defendant's guilt; second, it may be introduced in evidence for the purpose of mitigation, and it is always admissible for either one or the other of these purposes. Gilbert v. State, 8 Okla. Cr. 544, 128 Pac. 1100, 129 Pac. 671; Carney v. State, 29 Okla. Cr. 83, 232 Pac. 451.

The punishment for assault to do bodily harm may be by imprisonment in the penitentiary for any period of time from one minute to not exceeding five years, or imprisonment in the county jail not exceeding one year.

Under the statute the jury might have assessed the punishment of the defendant at imprisonment for one year in the penitentiary or county jail. The evidence of the character of the defendant was of utmost importance in this case, and it was his legal right to prove it to be good by any reasonable number of witnesses. It was therefore error for the trial court to sustain the objection to the introduction of the evidence of the good character of the defendant.

Other errors are assigned, but, in the view we take of this record, it is not deemed necessary to consider them. For the error above pointed out, the judgment of the lower court is reversed.

EDWARDS, P. J., concurs.

CHAPPELL, J. (dissenting). I cannot agree with the majority opinion of the court in this case.

Defendant in his opening statement in his brief says:

"Defendant admits the shooting. Defendant was standing in the front yard; Mannie Woods and the negro doctor came out of the house and started out of the gate; Mannie said 'Joe how do you like the snow'; defendant said: 'You should learn how to address white men' (C.-M. page 33); as he walked through the gate he said he was a free man and could say what he liked. Defendant called him an impudent hound. He whirled and said: 'I don't take that off of any damn white man.' Defendant picked up his target and Mannie Woods turned back the other way and said: 'Wait until I get a gun and I'll mix it with you.' Defendant told him to stop, he didn't and defendant shot him. (C.-M. page 34.) Defendant says he believed he had a gun at the corner of the fence, and he was making for it. (C.-M. page 34.)"

Defendant testified:

"Q. Why did you shoot them? I shot them because I thought I was in danger myself. (C.-M. page 44.)

"Q. What did they do that caused you to believe you were in danger? A. He made that rough remark about he wouldn't take that off of no damn white man and when he started back and I asked him to stop, and he wouldn't stop, I thought he was going for a gun. I didn't want him to get hold of it and me with nothing but that little old target. (C.-M. pages 44 and 45.)

"Q. What made you believe he had a gun? A. Simply because he was going that way and said wait until he could get a gun and he would mix it with me. I supposed he had a gun. (C.-M. page 45.)"

The evidence of the defendant established a clear case of unprovoked assault with a deadly weapon. This court has repeatedly held that it is not necessary for the court to instruct the jury on self-defense, where there is no evidence in the record tending to establish such a defense. Hunter v. State, 7 Okla. Cr. 300, 123 Pac. 564; Smith v. State, 22 Okla. Cr. 383, 212 Pac. 1012; Fabry v. State, 23 Okla. Cr. 215, 213 Pac. 910.

It was further contended that the trial court erred in refusing to permit the defendant to introduce in his behalf certain competent, relevant, and material evidence.

This assignment relates to the action of the trial court in refusing to permit the defendant to introduce evidence of his previous reputation in the community where he lived for peace and quietude and as a law-abiding citizen. The record discloses that the defendant made the required proffer of proof of this evidence.

This court has held that evidence of good moral character is always admissible and is material in the trial of a criminal case, not only as a matter of defense, but also

as a matter of mitigation. Gilbert v. State, 8 Okla. Cr. 543, 128 Pac. 1100, 1101, 129 Pac. 671.

In the body of the opinion this court said:

"It is always permissible for a person charged with the crime of murder to offer his or her general reputation in the community in which he or she resides as being a peaceable, quiet, law-abiding citizen, and such testimony is not confined to cases where the doctrine of self-defense arises, neither is it necessary that the defendant should first take the witness stand to render such testimony competent.

"Good character is admitted for two purposes: First, to raise the presumption that there must be some mistake in the testimony of the state, upon the ground that a person of good character would not have committed the crime charged, and for this purpose it may be sufficient to create in the minds of the jury a reasonable doubt of the defendant's guilt; second, it may be introduced in evidence for the purpose of mitigation, and it is always admissible for either one or the other of these purposes."

It was error for the trial court to refuse to permit this evidence to be introduced; but was it reversible error? Section 2822, C. O. S. 1921, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made, * * * it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

It is apparent that the rejection of this evidence did not constitute a substantial violation of any constitutional or statutory right given the defendant in a criminal case,

unless this court can say that the trial court's action in this respect deprived the defendant of a fair and impartial trial.

In the Gilbert Case, supra, this court has said that evidence of this kind is admissible for two purposes: First, in order to show that a person of good character would not likely have committed the crime charged. The defendant could not have been injured by its rejection on that theory where, as in this case, he admits the shooting and attempts to justify it solely on the ground of self-defense, and his own testimony is such as to show there is no self-defense in the case. If there had been any issue as to who committed the alleged crime or as to who was the aggressor where there was evidence of self-defense, then the rejection of evidence of this kind should be held to be reversible error despite our harmless error statute, section 2822, supra. However, where the accused testified to a state of facts that proved that he did not act on this occasion as a peaceable, quiet, law-abiding citizen would have acted, can he then be prejudiced by the exclusion of proffered testimony that he bears the general reputation of being a peaceable, law-abiding citizen? I think not, because he foreclosed that issue by his own testimony in this case. Evidence of good character could cast no doubt on the question of the firing of the shot—that was admitted by the defendant; neither could such evidence raise any doubt on the question of justification where the defendant testified to a state of facts that showed he was not justified under the law.

In expounding the doctrine of harmless error, this court has repeatedly held that no judgment of conviction should be reversed on account of the improper admission or exclusion of evidence, where it is clear from an inspection of the entire record that the error complained of did

not deprive the defendant of the benefit of some constitutional or statutory right or that the defendant was injured thereby, and to determine whether or not the defendant was injured thereby this court must consider the question of whether or not the defendant is guilty of the crime charged. Fowler v. State, 8 Okla. Cr. 130, 126 Pac. 831; Woody v. State, 10 Okla. Cr. 322, 136 Pac. 430, 49 L. R. A. (N. S.) 479; Lemley v. State, 13 Okla. Cr. 452, 164 Pac. 1152; Ray v. State, 35 Okla. Cr. 322, 250 Pac. 438; Crowell v. State, 40 Okla. Cr. 392, 276 Pac. 518.

In Braught v. State, 17 Okla. Cr. 1, 179 Pac. 769, 776, a death penalty case, the doctrine of harmless error was applied, and in the body of the opinion, on page 24 of the report, this court said:

"When an error has been committed upon the trial of a case it is the duty of the court, upon the inspection of the entire record, to determine whether or not the defendant suffered any material injury from such error. Unless such injury appears, the error will not be ground for reversal."

"When the evidence in a case is clear as to the guilt of a defendant, and all the forms of the law have been complied with, and there is no reason to believe that upon a second trial an intelligent and honest jury can arrive at any other verdict than that of the guilt of the accused, the judgment of the lower court will not be set aside for anything less than fundamental error. John W. Hooper v. State, 7 Okla. Cr. 43, 121 Pac. 1087; Coleman v. State, 6 Okla. Cr. 253, 118 Pac. 594; R. C. Swartz v. State, 6 Okla. Cr. 590, 120 Pac. 1029; Offitt v. State, 5 Okla. Cr. 49, 113 Pac. 554; Carter v. State, 6 Okla. Cr. 232, 118 Pac. 264; Suitor v. State, 6 Okla. Cr. 305, 118 Pac. 412; Smith v. State, 6 Okla. Cr. 380, 118 Pac. 1003; and many subsequent decisions."

In view of the fact that the defendant is guilty under his own testimony, the rejection of the proffered evi-

dence of good character was not prejudicial to his substantial rights, and did not deprive him of a constitutional or statutory right.

Secondly, this court has held that evidence of good character is admissible as a matter of mitigation of punishment.

The punishment fixed by the jury was one year in the county jail. Under defendant's own testimony, such punishment was wholly inadequate, and the infliction of the same tends to outrage justice and destroy law enforcement. The defendant shot the prosecuting witness in the back of the head with a rifle. There is no question of his guilt. Under his own evidence it cannot be said that he was entitled to, or that the jury might have given him, less punishment if the evidence had been admitted. Weak-kneed, sob-sister juries who return verdicts of this character and appellate courts which reverse such convictions on technicalities create disrespect for law and destroy its enforcement.

The refusal of the trial court to permit the defendant to introduce evidence of his good character and reputation for peace and as a quiet, law-abiding citizen was a technical error, but this court should not permit it to work a reversal of the judgment of conviction.