**Michael Eric WYATT, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15409.**

Court of Criminal Appeals of Oklahoma.

Oct. 13, 1971.

Rehearing Denied Jan. 3, 1972.

Elmore A. Page, James D. Bass, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for defendant in error.

## DECISION AND OPINION

BRETT, Judge.

Michael Eric Wyatt was convicted in the District Court of Tulsa County, Case No. 23639, for the offense of Robbery by Firearms. Plaintiff in Error will hereinafter be referred to as defendant, as he appeared in the trial Court. Because of the provisions of Title 57, O.S.Supp.1968, Section 138, which required an instruction on "Good-time Credits" allowed inmates in the penitentiary, defendant's trial was held in a two-stage proceeding. The jury returned a verdict finding defendant guilty of the offense in the first stage; and thereafter the jury was instructed to possess punishment with the erroneous instruction on "Time Credits" being given. From that conviction this appeal has been perfected.

The information alleged that about 12:20 A.M. on October 5th, 1969, defendant and another man robbed "Steve's Playboy Burger," an eating establishment in Tulsa, Oklahoma; during the robbery defendant allegedly also committed an assault on one Betty Johnson, by menacing her with a pistol; and the two men took from her possession eight hundred and four dollars ($804.00).

The witnesses present during the robbery testified that the defendant and another man, each wearing a woman's stocking over his head, entered the place of business; that the defendant used a pistol, and the other man wielded a hunting knife. Defendant and his companion required one of the employees to tear out the telephone in the front part of the place, but failed to destroy the telephone in the office. All of the employees were required to go to the office where the alleged assault of Betty Johnson occurred, after which the two men picked up the money, advised them to remain where they were and left. Mrs. Johnson immediately called the police, using the office telephone. Several hours later, at about 4:45 A.M., defendant was arrested at his father's residence. The record reflects that defendant, who was 19 years old, had experienced considerable financial difficulties; was unemployed at the time of the robbery; that his wife had recently had a baby, which died shortly thereafter; and that at the time of trial his wife was, or had been a patient at the State Mental Hospital at Vinita, Oklahoma.

The State produced six witnesses who were present when the robbery occurred. Three of the six witnesses identified the defendant as the man with the pistol when the robbery took place.

Defendant offered a defense that he was at a drive-in movie, at the time of the robbery, with his wife and a friend, Brian Thomas Graening; that about 11:30 P.M. they left the movie and drove to another hamburger place, bought something to eat and drink, and then went to Brian's house.

They allegedly played some records and watched television. Brian's testimony was much the same as that of defendant, who testified in his own defense. Brian's mother, Carol Graening, testified that defendant, his wife, and her son came home and played records, until she made them stop because the records were keeping her awake. She was in bed and did not see them, but heard them when they went to the bathroom.

Other witnesses were used in an effort to prove to the Jury's satisfaction that defendant did not commit the crime, including testimony that defendant was not a natural blond. One officer found a nylon stocking near the place robbed, which was allegedly worn by one of the two men and which had a blonde hair in it. The FBI Agent identified that hair as being so similar to the sample of defendant's hair, which defendant voluntarily provided for comparison, as to have come from defendant's head; or from some one else's head which contained the same type hair, which was most unlikely. The two hairs contained some twenty points of identification consistency.

All together, defendant used sixteen witnesses, some of whom had been witnesses for the prosecution, in his effort to satisfy the jury that he did not commit the crime. However, notwithstanding defendant's effort, the jury returned a verdict finding defendant guilty and sentenced him to imprisonment for not less than ten (10) years nor more than thirty (30) years. From that conviction this appeal was lodged.

■■■■ Defendant's first assignment of error asserts error contending that defendant's character was attacked when the Court permitted the identification of defendant, by the officer, who arrested defendant on the night of October 5, 1968. The Attorney General calls to the Court's attention that defendant's brief stops short of the full story, and he sets forth the remaining testimony of Officer Ekiff. We agree with the Attorney General that the Officer's identification was not prejudicial

to defendant, nor did that identification place defendant's character in evidence. He merely identified the defendant as the person he arrested on the basis of this charge. As pointed out, Officer Ekiff could have known defendant in school, or he could have met him in church. Defendant also complains, under this proposition, of State's exhibits number 2, 3, 4, and 5, asserting that they brand him as a "criminal character." However, we observe that no objections were offered to exhibits 2 and 3, which were black and white photographs of defendant, when they were introduced into evidence. Those photographs depicted defendant as he appeared at the time of the robbery. (C.M.–57.) Exhibits 4 and 5, which were additional black and white photographs of defendant, were made known by defense counsel to be police photographs prior to their being admitted into evidence; and, they were not admitted into evidence until after the defendant himself testified concerning when they were taken. Defendant testified that he had been photographed twice by the police department. The first time occurred when he was arrested on this charge; and he testified the second time he was photographed was when he was arrested on a "prowling charge." That charge was later dismissed. From the record it appears that the full knowledge of the second set of photographs was brought out by defense counsel, which he now asserts to be prejudicial. We also believe that witness Stan Herndon's identification of defendant was not jeopardized by his viewing of the first two photographs, (exhibits 2 and 3). He testified that he had seen the defendant at the hamburger place earlier that evening; and he related, later when the robbery occurred he identified the defendant, notwithstanding the nylon stocking. At the trial he testified that the photographs made him positive of the defendant's identity. We have reviewed all the authorities cited in defendant's brief and find that the factual situations in those cases are sufficiently different to this case to cause them not

to be applicable as defendant asserts them to be.

Insofar as exhibits 2 and 3 were introduced into evidence without objection from the defendant, and because the alleged error concerning exhibits 4 and 5 was brought out by defense counsel, this assignment of error is without merit. See Logan v. State, 95 Okl.Cr. 76, 239 P.2d 1044 (1952), wherein this Court provided:

"Counsel for the accused may not invite error in their examination of the state's witnesses and then complain of the error which was made."

See also: United States v. Gruber, 123 F. 2d 307 (2nd Cir. 1941), and United States v. Scully, 415 F.2d 680, 684, (2nd Cir. 1969).

■ Defendant's second assignment of error complains regarding the admission of testimony and exhibits pertaining to the identification of defendant by his hair; and his first proposition thereunder asserts:

"The court erred in admitting evidence of an analysis and comparison made by FBI Agent Paul Stombaugh, of hairs allegedly found near the scene of the crime and hair samples taken from the defendant since there was a break in the chain of identity of the hairs in question."

The testimony revealed that Officer Roy Goodenough found a lady's hose near the place robbed, and in the lady's hose he found a blonde hair from somebody's head. Later, with one of defendant's counsel being present, defendant provided hair from the top of his head, in order that a comparison could be made with the one found in the lady's hose. The items were sent to the FBI Laboratory for examination, and FBI Agent Stombaugh testified concerning that comparison. We do not accept defendant's contention that there was a break in the chain of identity of exhibits 6, 7 and 7A, in that Officer Tom Lewallen did not testify concerning the evidence sent for FBI analysis, as asserted

in defendant's brief. The officer was called as a witness for defendant and testified concerning certain police reports on an entirely different issue.

■ Defendant's second proposition under this assignment of error asserts that the trial court erred in denying defendant's exhibits 4 and 5, which were color photographs of defendant.

This proposition, coupled with the first one under this assignment of error, attempts to reveal that at the time of the robbery defendant's hair had been bleached with peroxide; and for that reason the hair analysis could not be accurate, nor could the identification of defendant by such analysis be acceptable. By a series of witnesses, defendant attempted to prove to the jury that his hair had been bleached, and in support thereof, he offered the two color photographs of himself, which the court refused to admit into evidence. At the time the photographs were offered, the date the photographs were taken could not be provided by defendant; but after defendant rested his case he was permitted to withdraw his announcement for the purpose of offering the professional photographer as a witness outside the jury's presence, to identify the photographs. He testified that defendant's exhibit 4, was made November 16, 1965, almost three years prior to the robbery; and his exhibit 5, was made on November 29, 1967, almost one year prior to the robbery. The State continued its objection to the photographs, which was sustained. We believe the court's ruling was proper because neither photograph would have aided the jury in this case. Both were taken at a time too remote to serve the purposes for which they were intended. See: Langley v. State, 90 Okl.Cr. 310, 213 P.2d 886 (1956); and Hudman v. State, 89 Okl.Cr. 160, 205 P.2d 1175 (1949).

■ In his third assignment of error, defendant challenges the State's attack upon defense witness Brian Graening, which he discusses under two propositions. However, the two propositions are so related that they will be discussed at the same time. They both complain that the State should not have been permitted to impeach the witness because of his mental competency, morality and alleged previous criminal activity.

The witness, Brian Graening, had been earlier committed to the State Mental Hospital at Vinita, Oklahoma. Defendant's motion for continuance because of this witness' commitment was denied. The court conducted a hearing outside the presence of the jury to determine the competency of the witness to testify, and determined that he was competent to testify. In his cross-examination, the prosecutor made it clear to the jury that the witness was a patient at the State Mental Hospital, by inquiring concerning his present address and having him state that he was a patient there. This was done in the guise of testing his credibility, which contains a ring of unfairness insofar as the prosecutor had the earlier statement the witness had given to the police. Defendant attempted to get the statement introduced into evidence to show the jury that his testimony was essentially the same as that contained in the earlier statement, given prior to his commitment to the hospital, but his efforts were to no avail. The Attorney General cites Clark v. State, 95 Okl.Cr. 119, 239 P.2d 797 (1952), to support his argument that an abuse of discretion must be shown to assert error. However, we observe that this Court said further in *Clark, supra*:

> "The trial court certainly should not allow cross-examination of the witness to extend into collateral matters which would cause the jury to place undue emphasis upon the collateral matters and forget the issue of the guilt or innocence which they are called upon to determine." at page 800.

Insofar as the State had in its possession the earlier statement of the witness, the tactics used were "unfair" to say the least. The impression left with the jury must have been that the chief witness for the defendant was a mentally incompetent per-

son, and could not be believed. If his testimony had been different from that contained in the statement, the tactics might take on a different light, but there is nothing in the record to reveal such difference. However, under the circumstances of this case it is doubtful that the outcome of the trial would have been any different, since three of the witnesses identified the defendant.

■ For his next proposition under this assignment of error, defendant asserts that it was improper for the State to attack the credibility of Mrs. Carol Graening, without permitting the defendant to offer rebuttal testimony. The record reveals that no objections were offered and no exceptions were saved by defendant, when the questioning occurred; and as pointed out by the Attorney General, such objection is not properly preserved for review. Further, defendant offers no supporting authorities to this proposition, and it is not of such fundamental nature to be considered in this appeal. See: Jones v. State, Okl.Cr., 341 P.2d 616 (1959), and Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969).

For his fifth assignment of error, defendant asserts that he did not receive a fair trial; and for his two propositions thereunder he asserts that the State engaged in improper conduct toward defense counsel. The first states the prosecutor should not have been permitted to criticize defense counsel for not making an opening statement. Notwithstanding the fact that he offers no supporting authorities for this proposition, the comments made by the prosecutor were improper. In his closing argument to the jury, after the prosecutor referred to his opening remarks and the outline of proof the State would offer, he then said to the jury in an effort to imply that defense counsel was concealing something, "What happened when Mr. Page came to his part of the opening statement? 'We waive the opening statement, we are just going to put our witnesses on.'" To the remark Mr. Page objected and moved for a mistrial, which was denied.

■ We believe such remark was uncalled for, unprofessional, and demonstrated the intense effort being exerted by the young assistant prosecutor to influence the jury; and he accomplished his objective in this case. While it is not reversible error, it adds to other such errors to effect the net results reached herein. 22 O.S.1961, § 831, requires that the information be read to the jury; and for the prosecutor to open the case, which is accomplished by his opening statement to the jury. The third paragraph of that section permits the defense counsel to make his opening statement at that time, later, or not at all. It is not proper for the prosecutor to comment upon defense counsel's decision to waive his opening statement, in a derogatory manner, in an attempt to leave an unfavorable impression with the jury.

Next, counsel complains of certain remarks made by the prosecutor during the progress of the trial, which he feels reflected on defense counsel's integrity. The comments referred to have been reviewed and we agree that they were unnecessary and should not have been made by the prosecutor. However, we observe that the conduct of counsel for both sides was not the most exemplary; and in several instances counter comments between counsel were engaged in, none of which was proper. We, therefore, deny this complaint of error.

■ For his sixth assignment of error, defendant contends the prosecutor gave his own opinion of defendant's guilt in his closing argument to the jury. We have reviewed the remarks complained of by defendant and believe they fall within the limits set in Hobson v. State, Okl.Cr., 277 P.2d 695, as being predicated upon the evidence presented to the jury. We have also reviewed the complaints defendant offers in his seventh assignment of error in which it is asserted the Court by its demeanor reflected an opinion as to defendant's guilt. As we review the Court's remarks, we do not see the impression asserted in defendant's brief. Many of the com-

ments complained of by defendant were made by the Court outside the hearing of the jury, so we fail to see how they would influence the jury. Admittedly, the trial Judge should reflect an unbiased countenance and demeanor throughout the trial. However, such a countenance can often be influenced by counsel in the trial of the case; and when such is brought on by counsel's conduct, it will not serve as reversible error. In this case no objections were offered to any of the comments complained of, and they cannot now serve as the basis to reverse the jury's verdict. In Dollie v. State, Okl.Cr., 316 P.2d 208, the following is provided:

"Though this Court sanctions the rule that the trial judge should proceed with dignity and preside with the utmost impartiality it will not reverse a case by reason of the trial judge's remarks, unless they appear prejudicial to the defendant as to prevent him from having a fair trial."

 In his ninth assignment of error, defendant complains concerning the trial court's instructions number four and number nine. The casemade before the Court does not contain the trial court's instructions; and in lieu thereof the record states:

"(Whereupon, the instructions which are on file in the office of the District Court Clerk were read to the jury.)"

Since the instructions are not contained in the record before this Court, they cannot be reviewed. It is plaintiff in error's responsibility to assure that the record contains all of the trial matters. The record does indicate that the Court's instructions were given to counsel at about eleven o'clock A.M. No objections to those instructions were offered until after they had been read to the jury, at about two o'clock P.M. Any objections to the Court's instructions and any requested instructions, should be made to the Court prior to the time they are read to the jury. In this case the objections came too late, and no requested instruction appear in the record. See: Clark v. State, Okl.Cr., 383 P.2d 236 (1963). However, under this assignment of error, the State concedes the giving of the erroneous instruction concerning "Good Time Credits" and admits that the sentence imposed herein is subject to modification in accordance with Williams v. State, Okl. Cr., 461 P.2d 997 (1969).

Defendant's last assignment of error is denied because no objection was made to the jury's verdict and no citation of authorities is presented in support of his contention of error.

 Therefore, after considering the record of defendant's trial and the State's concession of error concerning the instruction on "Good Time Credits," and for the other reasons herein stated, we are of the opinion the sentence imposed on defendant must be modified, without disturbing the judgment. We observe there is no showing that this defendant has been convicted of any other offense prior to this incident; so, under the facts presented we conclude that the sentence imposed of not less than ten (10) nor more than thirty (30) years imprisonment, is excessive.

It is therefore the order of this Court that the sentence imposed herein shall be modified to be imprisonment for ten (10) years, and as modified the judgment and sentence in case number 23,639 is affirmed.

BUSSEY, P. J., concurs.