James William **FIELDS**, Jr., **Appellant,**

v.

T.he **STATE** of Oklahoma, **Appellee.**

No. A–17128.

Court of Criminal Appeals of Oklahoma.

June 13, 1973.

Rehearing Denied Aug. 8, 1973.

Andrew L. Hamilton, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for appellee.

### OPINION

BLISS, Presiding Judge:

In the District Court of Oklahoma County, Case No. CRF–71–997, appellant, James William Fields, Jr., hereinafter referred to as defendant, was charged, tried and convicted for the offense of Possession of Amphetamine, After Former Conviction of Possession of Amphetamines. His punishment was fixed at seventeen (17) months and fifteen (15) days imprisonment. From that judgment and sentence he has perfected his timely appeal to this Court.

At the trial Officer Jerry Legg, of the Oklahoma City Police Department, testified that on March 14, 1971, at approximately 9:45 p.m. he and his partner, C. A. Acox, observed defendant walking on the north side of the 2400 block of west Main Street, Oklahoma City, Oklahoma. Defendant was staggering and appeared to be under the influence of intoxicants. Legg testified he stopped him and after a short conversation, noticed defendant's eyes were dilated, his speech was slurred, and he was unsteady on his feet. Legg testified he placed defendant under arrest for public intoxication and searched his person. The search revealed defendant had an Excedrin bottle in his pocket containing seventeen (17) capsules. The bottle and contents were marked as State's Exhibit 1 and 2.

Officer C. A. Acox, of the Oklahoma City Police Department, testified he was Legg's partner on the above date and at the above time and was present when defendant was observed. Acox further testified he observed Legg remove the Excedrin bottle from defendant's clothing and examine its content. Finally Acox testi-

fied that at a point in time after defendant's arrest, it was decided defendant was probably not under the influence of alcohol, but under the influence of pills and for that reason, they decided not to pursue a prosecution for public intoxication.

John McAuliff, Oklahoma State Bureau of Investigation chemist, testified he examined State's Exhibit 2 and determined the capsules in question contained an amphetamine substance referred to on the commercial market as dexedrine. McAuliff testified the manufacturer classified this capsule as a ten milligram amphetamine and this capsule was generally classified as a central nervous system stimulant. Thereafter, the State rested.

The defendant's mother, Mary Louise Fields, testified she, her family, and defendant, who temporarily was residing at her residence, were at her home on the evening in question. Shortly after 9:00 p. m. defendant left her home and did not return until the following day. Further she stated defendant was not under the influence of intoxicants when he left the home nor did she observe him with a bottle of pills in his possession. Finally, she stated defendant's demeanor was not unusual when he left her home.

Teresa Luster, defendant's sister, testified she was at her mother's home on the date in question. She stated that prior to the defendant leaving the home on that evening, she did not observe him drink an alcoholic beverage nor take any pills nor did he leave in an intoxicated condition. Thereafter, the defense rested.

 In defense counsel's first proposition error is assigned in the trial court denying appellant a hearing on his pretrial motion to suppress. We have carefully studied defense counsel's arguments and concur with his contention that the trial court erred in not granting this hearing. However, in an order dated February 5, 1973, this Court directed the trial court to conduct an evidentiary hearing on defendant's pretrial motion to suppress. In compliance with that order, Judge Clarence

Mills, on February 22, 1973, conducted an evidentiary hearing upon defendant's pretrial motion to suppress. As a result of that hearing, coupled with the transcript of trial, there is sufficient record before this Court to study the issues presented in regard to defendant's objection to the search of his person at the time of his arrest. For that reason, we are of the opinion the defendant has not been prejudiced by the trial court's denying a pretrial motion to suppress hearing and consequently the error arising out of this set of circumstances alone is harmless.

 Although not specifically argued in counsel's brief, the question of whether the search of defendant's person was a lawful search is properly before this Court. At the preliminary hearing defense counsel objected to the search and seizure of the contraband for the reason the arrest of the defendant for the offense of public intoxication did not culminate in a prosecution for that offense. Consequently, defense counsel's position on the search and seizure is clearly manifested as he contends the failure to prosecute the defendant for the offense of public intoxication clearly gives rise to a subterfuge. It is this Court's opinion that the existence or non-existence of subterfuge in effecting an arrest of the accused is a matter which is not established by any one independent factor, but is established by the evidence surrounding the arrest considered in its entirety. This court has held the mere fact a misdemeanor offense committed in the presence of an officer, which gave rise to a search which revealed evidence of a collateral offense, did not render the evidence obtained in the search inadmissible when the misdemeanor offense for which the defendant was originally arrested did not culminate in a conviction. State v. Holden, Okl.Cr., 344 P.2d 595 (1959). It logically follows if the record manifests sufficient evidence of an offense for which the accused is arrested, the mere fact the arresting officers for good cause shown later did not pursue a prosecution for the original offense, the record does not necessarily show a subter-

fuge per se. In the instant case, the officers testified defendant appeared to be intoxicated, further relating evidence of his conduct which supported their conclusion. The officers testified they did not appear in court and prosecute or pursue this offense of public intoxication as upon their finding the capsules upon defendant's person, they concluded that at the time he was probably under the influence of some form of drug rather than under the influence of an alcoholic beverage. It is this Court's opinion the evidence and circumstances surrounding the arrest of defendant were sufficient to justify a prudent officer's conclusion defendant was under the influence of intoxicants. Therefore, the arrest affected upon his observations was a lawful arrest. Incidental to a lawful arrest, an officer may make, without a warrant, a contemporaneous search of the person of the accused for weapons or for the fruits or implements used to commit the apparent offense. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The search of defendant's person was a proper search contemporaneous to a lawful arrest and consequently the contraband revealed from this search was properly admitted into evidence in this prosecution.

■ In defense counsel's second proposition he asserts his demurrer to the evidence should have been sustained as the proof received from the state chemist's testimony does not establish the capsules contained as a part of State's Exhibit 2 had a stimulating effect on the central nervous system. Title 63 O.S.1961, § 465.11(b) states as follows:

· "The term 'Stimulant' means any drug consisting of amphetamine, desoxyephedrine (methamphetamine), mephentermine, pipradol, phenmetrazine, methylphenidate or any salt, mixture of optical isomer thereof which drug, salt, mixture or optical isomer has a stimulating effect on the central nervous system."

At the trial the state chemist testified as follows:

"Q. Mr. McAuliff, do you recall how many tablets were given you or capsules?

"A. Nineteen.

"Q. How do amphetamines affect the human system?

"A. They are classified as a central nervous system stimulant.

"Q. What effect do they have on the central nervous system?

"A. I don't think I would be qualified to make any physiological finding.

"Q. But, they do cause a physiological change in a person's behavior?

"A. They are qualified as a central nervous system stimulant." (Tr. 31)

It is this Court's opinion that the above testimony is sufficient to establish through a qualitative analysis the substance contained in State's Exhibit 2 has a stimulating effect on the central nervous system. Consequently, the evidence was sufficient to present to the jury the question of whether defendant was in possession of a stimulant, as defined by 63 O.S.1961, § 465.11(b).

It should be further noted that this Court in the case of Stallcup v. State, Okl.Cr., 401 P.2d 197 (1965) applied 63 O.S. 1961, § 418 to a prosecution arising out of the same statutory section as the instant prosecution. The above section states as follows:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provisions of this Act, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this Act, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant."

It is our opinion the question presented by defense counsel in this proposition more properly refers to a factual determination to be made by the jury. Defense counsel in his defense should have presented evi-

dence asserting this substance contained in State's Exhibit 2 could not have a stimulating effect on the central nervous system. The evidence presented by the state chemist was sufficient to establish this substance had a stimulating effect on the central nervous system. Consequently, the subject of defense counsel's second proposition is more properly a question for the jury, in the jury's determination of whether or not defendant was in fact in possession of a stimulant, as defined by 63 O.S. 1961, § 465.11(b).

█ In defense counsel's final proposition he asserts the closing arguments of the prosecutor were improper as they made an unmistakable reference to good time credits. During the prosecutor's closing arguments at page 74 of the transcript, the following statement is recorded:

> "If you sentence him to two years in the penitentiary, if he goes down there and spends some time and behaves himself, he certainly won't be there that long."

Further, at page 78 of the transcript the prosecutor's closing arguments further revealed the following statement:

> "Sometimes I recommend the maximum. I haven't done it in this case. If I had recommended the maximum, I would have said two years in the penitentiary and a thousand dollar fine. Needless to say, I know if he behaves himself, he will be down there for a shorter time than two years."

It is this Court's opinion the above statements are an unmistakable reference to the defendant possibly being the recipient of good time credit during his institutional stay, a practice which is clearly outside the scope of proper closing arguments. Wyatt v. State, Okl.Cr., 491 P.2d 1098 (1971). The punishment imposed in the instant case will therefore be modified to one (1) year imprisonment and the judgment and sentence affirmed.

BUSSEY, J., concurs.

BRETT, J., concurs in results.