Edward HUTCHINSON, and Pamela Jean
Hutchinson, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. M–76–923, M–76–924.

Court of Criminal Appeals of Oklahoma.

March 29, 1977.

**868**

Don J. Sullivan, Poteau, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellants, Edward Hutchinson and his wife Pamela Jean Hutchinson were charged and jointly tried and convicted in the District Court, Le Flore County, for the offense of Unlawful Possession of Marijuana, Case Nos. CRM–76–133, and CRM–76–134, in violation of 63 O.S.Supp.1973, § 2–402(B)(2). The jury fixed the punishment of both defendants at one (1) year in the County Jail. From these convictions, timely appeals have been filed and by order of this Court, consolidated for purposes of this opinion.

The facts may be summarized as follows:

Officer Dennis Dugan testified that he was a patrolman with the Poteau Police Department and in August, 1976, had been employed as such for sixteen months. In the early morning hours of March 14, 1976, he and officer Gene Thomas were on patrol in Poteau when they had occasion to stop a vehicle because it was crossing over the center median and also the retainer line, on the highway. Officer Dugan approached the vehicle from the passenger's side while Officer Thomas approached from the driver's side. The defendant, Edward Hutchinson was seated on the driver's side and his wife, Pamela Jean Hutchinson the co-defendant was seated next to him. Officer Dugan observed Mrs. Hutchinson attempting to hide a half filled whiskey bottle under the front seat. Mrs. Hutchinson was then ordered by the witness to step out of the vehicle. On the other side of the vehicle, Mr. Hutchinson had emerged and was being questioned by Officer Thomas. At this time Officer Dugan noticed that a pair of scissors were protruding from the car's ashtray. Officer Dugan then reached into the vehicle, removed the scissors from the ashtray, and observed what he believed to be the burnt remains of a marijuana cigarette sticking to the end. The witness proceeded to search the vehicle and discovered a cellophane bag of marijuana under the driver's side of the bench seat. At this time Officer Bob Hendrix arrived at the scene and when shown the already retrieved evidence, searched the vehicle and found another bag of marijuana under the passenger's side of the front seat. The witness then identified an envelope, dated and initialed, which contained the bags of marijuana allegedly removed from the vehicle.

On cross-examination the witness stated that he and the other officers had first seen the defendants in Sammy's Cafe, in Poteau, earlier in the evening. The defendants had been accompanied by four other people and this group left shortly before the officers did. When the officers returned to their vehicle they saw that two of their car tires had been punctured. Officer Dugan admitted that he believed that the defendants may have had some knowledge of this incident and therefore the defendant's vehicle would have been stopped for questioning regardless of any traffic violation.

Officer Bob Hendrix testified that he was a police officer in Poteau and had been in this position for about two years. On March 14, 1976, Officer Hendrix had been in Sammy's Cafe in Poteau along with Officers Dugan and Thomas. At that time he had observed the defendants along with several other people leaving the cafe. Later Officer Hendrix arrived at the scene where the vehicle of the defendants had been stopped. The balance of the witness' testimony essentially corroborated the testimony given by Officer Dugan.

Officer Gene Thomas then testified that he was a Poteau Police Officer and had been so employed for six years. On March 14, 1976, he and Officers Dugan and Hendrix were in Sammy's Cafe in Poteau at the same time as the defendants. Officer Thomas testified as to the events leading up to the discovery of marijuana in the vehicle of the defendants. His version was substantially the same as the testimony of Officer Dugan. Officer Thomas then described the chain of custody which the marijuana went through before reaching the State Crime Laboratory at McAlester.

Gerald Ballew was the next witness for the State. He testified that he was a chemist for the Oklahoma State Bureau of Investigation in McAlester. After being qualified as an expert witness, Mr. Ballew testified that he had performed chemical analysis of the substances in the bags found under the front seat of the defendants' car. In his opinion the contents of the bags and the cigarette on the end of the scissors, all contained marijuana. At this time the trial court admitted, over the objections of defense counsel, the bags and the cigarette as State's Exhibits No. 1 and No. 2.

The last witness for the State was Sam Sparks. Mr. Sparks stated that he was employed by the Oklahoma State Bureau of Investigation. He picked up State's Exhibits No. 1 and No. 2 in Poteau on March 16, 1976, and delivered them to the State Crime Laboratory at McAlester. The witness testified that the envelopes were sealed when he picked them up and that he did not open them at any time. At this time the State rested. The defendants then demurred to the evidence. The demurrer was overruled by the trial court.

Herbert Killion was the first defense witness. Mr. Killion testified that he was the former Police Chief of Heavener, Oklahoma, and had known the defendants personally for about a year. According to the witness the defendants had a good reputation for truth and veracity in the community.

Pamela Jean Hutchinson, the co-defendant, then testified in her own behalf. On the evening of March 13, 1976, Mrs. Hutchinson and her husband the co-defendant Edward Hutchinson, borrowed a car from some friends and then proceeded to the home of Mary Owen, a girlfriend of Mrs. Hutchinson. At approximately 9:00 p. m., the defendants along with Mary Owen and Ernie LaMay proceeded to the Green Country dancehall. While at Green Country they were joined by two young boys. The party of six then proceeded to Sammy's Cafe in the car being driven by Mr. Hutchinson. Mrs. Hutchinson then stated that the two young boys left Sammy's Cafe a short while before the defendants and their other friends went outside. The defendants then drove the young boys along with Ms. Owen and Mr. LaMay to their respective homes. A short while after, the defendants' vehicle was pulled over by Officers Dugan and Thomas. Mrs. Hutchinson's version of the subsequent events was similar to that of the officers with the exception that she denied any use or knowledge of the marijuana or how it came to be located in the borrowed vehicle. On cross-examination, the witness stated that on the night in question the two young boys previously mentioned had admitted to puncturing the tires of the police car.

The State then called Gene Thomas in rebuttal. He stated that the defendants left Sammy's Cafe at the same time as the four other people in their party.

The defendants raise for their first assignment of error, the denial by the trial judge of their motion to suppress the marijuana. They claim that the events leading up to and immediately after the stopping of their vehicle formed part of a subterfuge in that the real reason the officers stopped them was to inquire as to the tire puncturing. *Fields v. State*, Okl.Cr., 511 P.2d 1116 (1973) is cited for the proposition that a subterfuge is established by the totality of the evidence rather than by any one independent factor. It is apparent from the record before us that one of the stated purposes of the stop was to inquire about the punctured tires. We first note that both officers Thomas and Dugan in their

testimony immediately before trial in the hearing on defendant's motion to suppress stated from the stand that they were looking for the particular vehicle and occupants of that vehicle to question them about the tire puncturing which had occurred earlier that evening, and that when they saw the vehicle one of the reasons for the stop was to question the occupants about the puncturing of the police unit tires. In response to defense counsel's questioning of Officer Thomas during the hearing on the motion to suppress the following colloquy took place concerning the stop:

"Q. Do you recall earlier at Sammy's if there was other individuals with the defendants?

"A. Yes sir, there was.

"Q. There was? Were these the same individuals who cut the tires on the petrol (sic) car?

"A. Yes sir, two of them was.

"* * *

"Q. Was this basically the reason that you . . . this was basically the reason though that this automobile was stopped was because of these tires?

"A. This is the reason we was looking for the automobile. We were looking for this automobile but when we found this automobile he was driving erratic. So we had actually two reasons why we stopped the vehicle." (Tr. 6, 7).

Officer Dugan's testimony on the reason for the vehicle stop was essentially the same. From the foregoing it is apparent that the officers believed they had two reasons to stop the defendant's vehicle; we need, therefore, to examine each reason separately. Officer Dugan stated that while in the company of Officer Thomas they stopped by Sammy's Cafe in Poteau, Oklahoma for coffee, and in response to defense counsel's question why he thought the defendants might have cut the police unit tires, Officer Dugan responded:

"Well, we was in Sammy's and Mr. Hutchinson (defendant) was getting a little belligerent with the waitresses and they had asked him to leave. He didn't quite (sic) down. And he paid no atten-

tion to that, evidently then they asked him to leave and they all left and he had made some . . . he and some of his party gesture towards us and as they left, we noticed the car go slowly around the side of the building and as the car went slowly around the building, we just left. And as we went out, we heard the tires." (Tr. 21).

On cross-examination by Mr. Amend the following colloquy took place:

"BY MR. AMEND:

Officer Dugan, I understood you to say that you observed the defendant's vehicle pull around the side of Sammy's Cafe . . .

"A. Yes sir.

"Q. . . . in a slow manner. And was this the side of the cafe where your vehicle was parked?

"A. Yes sir.

"Q. And you then left immediately and went outside?

"A. Yes sir, we left.

"Q. And you heard the air escaping from your tires?

"A. Yes sir.

"Q. And then discovered they had been punctured?

"A. Yes sir.

"Q. Was there anyone else in the vicinity?

"A. No sir.

"Q. That you could see?

"A. No one around." (Tr. 22).

Under the circumstances, we are of the opinion that the officers had the authority to stop the vehicle and make reasonable inquiry of its occupants concerning what, if any, knowledge they had concerning the puncturing of the tires. See, *Lloyd v. State*, Okl.Cr., 505 P.2d 1364 (1973).

This leads us to an examination of the second reason for stopping the defendants' vehicle. Officer Thomas testified that what he meant by erratic driving is that the defendants' vehicle was crossing the center dividing line of a four-lane highway and

veering back to the shoulder of the road.[1] Clearly, this is a misdemeanor committed in the presence of the officers and he had the authority to stop and arrest the defendants. See, *Steenbergen v. State*, Okl.Cr., 506 P.2d 619 (1973).

We next turn to the issue of whether or not Officer Dugan properly removed what he observed to be scissors, or possibly hemostats, from the ashtray of the defendants' vehicle. At the hearing of the motion to suppress, Officer Dugan testified that after he retrieved the open container of whiskey that Mrs. Hutchinson was trying to conceal that he was shining his flashlight in the defendants' vehicle and saw what he perceived to be scissors in the ashtray. He then stated:

"I pulled the scissors out because I thought they might have been the weapon—the instrument used to puncture the tires. At this point we thought they was the people that did puncture our tires." (Tr. 16).

However, when Officer Dugan reached into the vehicle and removed the scissors, he found them to have the appearance of a hemostat with, what he observed to be marijuana, clasped to the end.

■ Having determined that the officers properly stopped the defendants' vehicle we are of the opinion that the facts of this case come well within the doctrine set forth in *State v. Baxter*, Okl.Cr., 528 P.2d 347, 349 (1974) wherein we stated:

"This Court recognizes the rule of law that an officer, lawfully in any place may, without obtaining a search warrant, seize from a motor vehicle any item which he observes in plain or open view, if he has probable cause to believe that the item is contraband, a weapon, *anything used in committing a crime*, loot, or other evidence of crime. See *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)." (Emphasis added).

See, also *Lloyd v. State*, supra. At this point in the evidence it is apparent the officers had observed these crimes committed in their presence—the traffic violation, transporting an open container of an alcoholic beverage, and possession of marijuana. They therefore had probable cause to arrest both defendants—Mr. Hutchinson for all these offenses and Mrs. Hutchinson for conjoint possession of marijuana. The search of the defendants' car was incident to a lawful arrest and predicated on probable cause given to the officers after having observed Mrs. Hutchinson trying to conceal the open container of alcohol and after having observed the scissors or hemostats clasping the marijuana roach. See, *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Seher v. State*, Okl.Cr., 554 P.2d 66 (1976); and *Gaston v. State*, Okl. Cr., 457 P.2d 807 (1969). From the foregoing reasons it can be seen that the trial court properly denied the defendants' motion to suppress; the first assignment of error is therefore without merit.

■ The defendants' third, fifth and sixth assignments of error are all based on the proposition that the State failed to prove all the elements of the crime charged, and therefore the defendants demurrer to the evidence should have been sustained. *Brown v. State*, Okl.Cr., 481 P.2d 475 (1971) is cited for the proposition that in possession of marijuana cases, where the defendant does not have exclusive access, use, or possession of the premises, guilty knowledge must be shown by additional independent factors. We think that there were such independent factors in this case. The scissors with the marijuana cigarette attached, which protruded from the ashtray, were in plain view of and within the easy reach of each defendant, and a baggie of marijuana was found under each defendant's seat. Although the testimony on these points was contradicted by the defendants, the jury could have reasonably concluded that each of the defendants possessed the requisite guilty knowledge.

---

1. The officer could have charged the driver with changing lanes unsafely in violation of 47 O.S.1971, § 11–309(1) or possibly reckless driving in violation of 47 O.S.1971, § 11–901.

*Deer v. State*, Okl.Cr., 530 P.2d 568 (1974). The evidence was therefore more than sufficient to support a conviction for the crime of Unlawful Possession of Marijuana and the trial court properly overruled the demurrer to the evidence.

■ For their next assignment of error the defendants assert that the trial court should have granted their motion for a new trial. The record shows that on August 17, 1976, the defendants filed their motions and in support thereof, submitted a notarized affidavit from a juvenile who stated that he and his juvenile companion were the ones who placed the marijuana under the front seat of the vehicle being driven by the defendants. The affidavit went on to state that the affiant had been in the custody of the Department of Institutions until having been released shortly before swearing to the affidavit. For this reason the defendants claim that their motion for a new trial should have been granted because of newly discovered evidence. We note that the defendants make no assertion that they attempted to subpoena either juvenile or ascertain their whereabouts. Furthermore, on April 21, 1976, and May 19, 1976, continuances from trial were granted by the trial court, so the defendants had almost five months before trial in which to prepare their case. In *Lemmon v. State*, Okl.Cr., 538 P.2d 596, 602 (1975) we stated:

> "This Court has held that a new trial should not be granted on this ground unless the evidence is such that had the evidence been introduced at trial there is a reasonable probability that a different result would have been reached. Additionally, it must be established that *even with the exercise of due diligence the evidence could not have been produced at trial* . . . (Emphasis added).

Since the record is bare of any effort by the defendants to obtain the presence of the juveniles, we can find no showing of due diligence. The trial judge therefore, did not abuse his discretion in denying the motion for a new trial.

■ The last assignment of error is that the sentence imposed was excessive under the facts of this case. 63 O.S.Supp.1973, § 2–402(B)(2) states:

> "B. Any person who violates this section with respect to:
> " * * *
> "2. Any schedule III, IV or V substance, marihuana or a substance included in subsection D of Section 2–206 is guilty of a misdemeanor punishable by confinement for not more than one (1) year. . . ."

Consistent with our recent opinion of *Gray v. State*, Okl.Cr., 561 P.2d 83 (1977), the sentence of each defendant is modified from one (1) year in the county jail to sixty (60) days in the county jail. Finding no errors which would require reversal, the judgment and sentence is AFFIRMED as MODIFIED.

BLISS, J., concurs.

BRETT, J., concurs in part, and dissents in part.

BRETT, Judge, concurring in part and dissenting in part.

I concur that this sentence should be modified, insofar as the judgment and sentence is being affirmed; but I dissent to that part of the opinion that affirms the judgment and sentence. I would reverse this conviction because it appears to me that the arrest was premised upon a subterfuge and was therefore an illegal arrest. I question also the validity of the search of the vehicle, as was done in this case. Therefore, I dissent to the affirmance of this conviction.