**Bernard CRAWFORD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–351.**

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1984.

Rehearing Denied Sept. 26, 1984.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Susan B. Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Bernard Crawford, hereinafter referred to as the defendant, appeals his conviction of First Degree Rape, After Former Conviction of a Felony, and sen-

tence of twenty (20) years imprisonment from the District Court of Tulsa County, Case No. CRF–80–2920.

The background facts are that during the early morning hours of August 23, 1980, defendant was observed by an undercover policeman crawling out of a window of a house wherein he last committed a rape. Defendant was then seen by four other undercover policemen running to his truck and driving away. Defendant was then followed, and within 10 or 15 minutes, stopped and arrested as the first officer had radioed that a rape had occurred and defendant was suspect.

Defendant was taken to the police station, where he signed a search waiver form for his house and truck and a *Miranda* Rights Waiver. Several officers testified that defendant was read his *Miranda* rights and had confessed to the rape, though this was denied by defendant on direct examination.

Additionally, a gun was found on the defendant at the time of arrest, which defendant also denies. Finally, a roll of twenty dollar bills amounting to $300, which the rape victim had reported stolen, was found in the front seat of the truck along with a pair of yellow surgical gloves which the victim described her assailant wearing.

We now turn to defendant's allegation of error. At the outset, we wish to compliment defendant's attorney on having such a well prepared and preserved record.

■ Defendant complains that it was error for the trial court to admit testimony regarding defendant's confession to police of the rape which was allegedly obtained in violation of Defendant's Fifth and Sixth Constitutional Amendment rights. Defendant alleges that from the time of his arrest to the time he was booked, he was physically and mentally abused and was denied an attorney when he so requested.

We find that we need not reach the merits of this contention. Defendant, on direct examination, denied ever having confessed to the police at all, and as such, the issue of whether the confession was voluntary or involuntary is moot.

■ The next complaint is that the trial court committed reversible error in allowing the former district attorney to testify about defendant's confession taken in violation of the Code of Professional Responsibility. The relevant section, DR7–104, states that:

"[D]uring the course of his representation of a client, a lawyer shall not ...

. . . . .

(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are, or have a reasonable possibility of being in conflict with the interest of his client."

Defendant contends that the district attorney for the State of Oklahoma should have known that the interests of defendant were going to be in conflict with his interests as advocate for the State of Oklahoma, and as such, the only advice he should have given defendant was to secure other counsel. In eliciting a confession from defendant, defendant contends the district attorney was in violation of the Code of Professional Responsibility, which has been adopted in Oklahoma, and as such, should not have been allowed to testify about defendant's confessions.

While we wish to congratulate defendant on his unique and imaginative argument, we are not prepared to adopt such reasoning in order to hold that the district attorney violated DR7–104. In addition, we again note that defendant testified that no confession was ever made by him; therefore whether a confession was made in violation of the Code of Professional Responsibility is moot.

■ Defendant next contends that the trial court erred in preventing the defendant from examining Officer Sherl, a state's witness, about motive, and this was a prejudice toward the defendant. Defendant, if allowed, was allegedly prepared to prove that Officer Sherl had told Deputy Fritz to tell defendant "... that Jack Sherl said

that if it had not been for two joggers, that he would have blown Mr. Crawford away, and that when Mr. Crawford got out, that he had better watch his back, being Mr. Sherl was going to blow his ass away."

Defendant is permitted cross examination of prosecution witnesses in order to test credibility and develop facts which may tend to show bias, prejudice, or any other motive for testifying. *Lankister v. State*, 298 P.2d 1088 (Okl.Cr.1956); *Pryor v. State*, 37 Okl.Cr. 102, 257 P. 335 (1927). As such, defendant should have been allowed to introduce such evidence as it was probative of Sherl's bias, prejudice or any other motive for testifying. While the trial court erred in not allowing such evidence, we cannot say in light of the overwhelming evidence of defendant's guilt that such error warrants reversal.

■ Defendant next contends that the trial court erred in allowing the State to introduce improper rebuttal testimony. The law in Oklahoma is that in rebuttal, the State may introduce evidence which explains, repels, counteracts or destroys evidence introduced by defendant, notwithstanding that the same testimony might have been introduced in chief and that the introduction of such is a matter of discretion for the trial court, which will not be grounds for reversal, absent abuse thereof. *Schneider v. State*, 538 P.2d 1088 (Okl.Cr. 1975); *Henderson v. State*, 389 P.2d 363 (Okl.Cr.1964).

■ Defendant contends that the testimony of Officer Jordon relating to defendant's confession was improper rebuttal as well as Sergeant Lawson's testimony concerning why defendant never made a typed statement. Defendant also objects to the rebuttal evidence of the gun and hair sample and testimony stemming therefrom. The State claims that the rebuttal testimony was offered to rebut defendant's claims that he did not have a gun on him at the time of the arrest and that an attorney was not provided when he so requested.

While the above testimony could have properly been introduced in chief, the

court, in *Schneider v. State*, supra at 1095, stated that:

"When the state makes out a clear case in chief, the fact that certain testimony was reserved for rebuttal, which would have been admissible in establishing the case in chief, but which is clearly in rebuttal of a material defense, or testimony introduced in defense, does not render the same inadmissible."

As such, we find that although defendant's contentions concerning the rebuttal testimony are close questions, we find no abuse of the trial court's discretion in allowing this evidence.

■ Defendant next contends that the trial court erred in allowing the state to point out that the defendant had not worn a suit during the commission of a crime. The defendant claims that identification based on appearances was not in issue and therefore the testimony improperly placed the defendant's character before the jury. We find no merit in that contention in that defendant's identification was in issue. Even if identification was not an issue, this testimony in no way put defendant's character before the jury. *Wyatt v. State*, 491 P.2d 1098 (Okl.Cr.1972).

■ Defendant complains that it was error for the prosecutor, in his closing argument, to attack defendant's wife's credibility by pointing out that she had violated the Rule of Sequestration. We find this to be a fair comment on the evidence, and consequently, the assignment of error is meritless. *Mahorney v. State*, 664 P.2d 1042 (Okl.Cr.1983); *Green v. State*, 611 P.2d 262 (Okl.Cr.1980).

■ Defendant complains that the trial court committed reversible error by admitting testimony and exhibits obtained as a result of unconstitutional electronic surveillance of the defendant in violation of his Fourth and Fourteenth Amendment rights. Prior to defendant's arrest, Tulsa's special police task force had placed a magnetic tracking device ("beeper") on the frame of defendant's black pickup truck, as defendant was a suspect in prior rapes occurring

in the area. The beeper acts as a homing device and, as such, aids police in tracing the vehicle's movement.

Defendant contends that in attaching the beeper to the defendant's truck, without first securing a search warrant, the police violated the defendant's Fourth Amendment right to be protected from unreasonable searches and seizures. Thus all evidence gained from the alleged illegality should have been suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

This Court has not yet decided the constitutionality of the warrantless installation of a beeper on the exterior of one's vehicle. Due to the particular circumstances of this case, we need not address the issue at this time.

Defendant has failed to show this Court that any of the evidence admitted at trial was a result of the installation of the beeper. The defendant was seen in the commission of a crime when one of the officers saw him crawling out of the victim's window. Another officer saw him come from behind the victim's house and run to his truck. Several other officers saw defendant run to his truck and drive off. These same policemen followed the defendant by visual surveillance without the aid of the beeper and when the first officer had radioed to them that a rape had occurred and defendant was suspect, the officers stopped and arrested defendant. Neither the arrest nor any evidence discovered therefrom was a result of the beeper.

This Court notes that the grounds for arrest without a warrant were met. 22 O.S.1981, § 196 states that:

"A peace officer may, without a warrant, arrest a person:

(1) for public offense, committed or attempted in his presence ...

   .    .    .    .    .

(3) when a felony has in fact been committed and he has reasonable cause for believing the person to have committed it...."

Applied to the present facts, there were proper grounds for defendant's arrest at the time the first officer saw him coming out of the victim's window. In addition, once the officer determined that a rape was committed, there was clearly reasonable grounds for believing defendant committed the crime as he was seen just minutes before leaving the victim's house. The arrest, therefore, was based on proper grounds, and was hence valid.

Defendant contends that even the eyewitness testimony of the officer concerning the defendant's appearance in the vicinity of the victim's house should be suppressed since the officers were in that area as a result of following defendant's truck to the area with the aid of a beeper. However, we do not find that the policemen's presence in the area was an invasion of defendant's constitutional rights. This is especially true in light of defendant's testimony that neither he nor his truck was ever in that particular vicinity during the relevant time period. Defendant can not now be heard to complain that although he was in the area, he was seen by police who had no right to be there in order to see him.

■ Lastly, defendant complains that the trial court erred in receiving the verdict of the jury. The jury had returned with a verdict of guilty at 4:40 a.m. Upon polling the jurors, one juror made a statement to the court indicating that she was somewhat confused as to whether she could change her mind on the verdict. In trying to determine what the juror's vote was, the court learned the sentence of 20 years imprisonment had been arrived at by a majority rather than a unanimous vote. The court sent the jury back for further deliberations with the oral instruction that there must be unanimous vote as to the sentence. The court never specifically commented on the juror's statements. At 5:15 a.m., the jury announced that they had reached a verdict of finding the defendant guilty of First Degree Rape After Former Conviction of a Felony, and sentenced him to 20 years imprisonment. Upon the jury being polled,

all, including the juror in question, stated that this was their verdict.

In light of the lateness of the hour, and the general confusion, the court was diligent in trying to poll the jury and elicit a verdict. The instruction on reasonable doubt was clear, and we find that the second verdict upon the polling of the jury was valid and properly received by the court. Although the court should not have orally instructed the jury as to the requirement of a unanimous vote on the sentence, we find that since the defendant received the minimum sentence allowed by law, this error does not warrant reversal.

Accordingly, the judgment and sentence is AFFIRMED.

BUSSEY, P.J., concurs.

BRETT, J., concurs in results.